Gene Wilford HATHORN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 69503.

Court of Criminal Appeals of Texas, En Banc.

Oct. 28, 1992.

Rehearing Denied Jan. 27, 1993.

John D. MacDonald, II, New Caney, for appellant.

Joe L. Price, Dist. Atty., and Robert H. Trapp, Asst. Dist. Atty., Groveton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

On June 27, 1985 a Trinity County jury convicted appellant, Gene Wilford Hathorn, Jr., of the capital murder of his father, Gene Hathorn, Sr.[1] After the jury returned affirmative findings to the two special issues submitted under Tex.Code Crim. Proc.Ann., Art. 37.071(b)(1) and (2), he was sentenced to death. This case is before us on direct appeal.[2]

Appellant, through his counsel appointed by the trial court, raises twenty-two points of error for this Court to review. Additionally, he raises four pro se points of error in his own brief to this Court. Finding no merit in these contentions, we affirm the judgment of the trial court.

Appellant challenges the sufficiency of the evidence supporting his conviction in points of error three through five. In point of error number three, he alleges that the evidence was insufficient to support the allegation that he employed another for remuneration or the promise of remuneration to commit murder, or that the murder was carried out pursuant to that employment. In point of error four, he alleges that the evidence was insufficient to support the allegation that he committed murder for remuneration or for the promise of remuneration. And, in point of error five, he alleges that the evidence was insufficient to support the allegation that appellant committed murder in the course of committing the offense of burglary of a habitation.

The evidence at trial showed that on October 9, 1984 appellant and his accomplice, James Lee Beathard (Beathard),[3] carried out the execution of appellant's father, stepmother, and stepbrother. That day, he and Beathard drove to Beathard's step-father's land in Gallatin to target practice. After shooting off several rounds from their guns, they drove to Nacogdoches. They made several stops along the way engaging in conversations with people to increase their visibility. One place they stopped was Stephen F. Austin University. While there, Beathard checked out several books at the university library. The two stopped for gas, had dinner and then drove to the victim's residence in Nogalus Prairie. When they neared the victim's residence, they hid the car in the nearby woods. They then continued walking through the woods toward the victim's property.

Beathard and appellant walked behind the trailer and peeked through the back window. They saw Hathorn, Sr., and his wife Linda Sue, sitting on the couch, watching television. They also saw the couple's fourteen year-old son Marcus sitting nearby. Appellant shot and killed his father through the trailer's back window. Immediately thereafter, Beathard gained entry to the mobile home through the unlocked

---

1. Tex.Penal Code Ann. § 19.03(a)(2) and (3).

2. Tex.Code Crim.Proc.Ann., Art. 37.071(h).

3. In *Beathard v. State,* 767 S.W.2d 423 (Tex. Crim.App.1989), we affirmed the trial court's imposition of the death penalty for Beathard.

back door. Once inside, he shot and killed appellant's step-mother and half-brother. A total of eleven shots were fired with three different weapons: a shot-gun, .223 caliber rifle and .380 caliber pistol.

Beathard and appellant planned to make the crime scene look like a group of "drug-crazed niggers" had committed the murders during a burglary. For that reason, after the killings, and according to plan, they planted false evidence in the trailer home. The false evidence included cigarette butts which had been smoked by black people as well as hair that appellant had taken from black people at the Rusk State Hospital, where he had been employed.

After planting the evidence, they also took an armload of guns, a video cassette recorder and video disk player from the mobile home. Appellant took his father's van and abandoned the vehicle in Nigton, a predominately black neighborhood. The weapons used in the crime, along with the stolen property, were thrown into rivers. And, on the way home, appellant and Beathard revisited the library to check out another book.

Appellant knew he would be a prime suspect so, in order to allay suspicion, he contacted the local authorities the next day and pretended to have discovered the murdered bodies. When questioned about his whereabouts, he told authorities that he had been at the library and at the shopping mall on the date in question.

Three individuals testified that appellant attempted to hire them to help commit the murders during the period just before they were actually committed. They testified that appellant described a plan to commit the murders in a manner identical to that subsequently used. And, the jury was read a transcript of appellant's own judicial confession to the commission of this offense, which was given during the trial of his co-defendant. Appellant's testimony at that trial was given against his attorney's advice and after being admonished before the trial judge and the District Attorney.

Other evidence in the record indicated that appellant had purchased the same type of guns as the three used in the murders less than a year prior to the offense. A few days after the murders, appellant made inquiries regarding whether his guns could be traced. He lied to investigators about the type of vehicle he was driving the night of the murders. He asked an investigator whether any hair or cigarette butts had been found at the murder scene; the same evidence had been discovered but was later ascertained to be false evidence intentionally planted by the perpetrators. He directed the Trinity County Sheriff to rivers where the Sheriff located one of the murder weapons and articles which had been stolen from the Hathorn, Sr. residence. He indicated to the Sheriff that he had personally put the items in the rivers. And finally, there was a positive ballistic's match between the .380 caliber shell casings found at the scene of the murders and .380 caliber shell casings known to have been fired from appellant's own pistol prior to the murders.

In point of error five, appellant asserts that the evidence is insufficient to support the allegation that he committed the murder in the course of committing the offense of burglary of a habitation. See Tex.Penal Code Ann., § 30.02(a)(1). In support of that assertion, appellant argues that the State failed to prove that he "entered the habitation without the effective consent of the owner." He claims that he had an open invitation to enter his father's house and that he was in a position, as the son of the deceased, to act on his father's behalf and give consent to Beathard to enter the trailer on the night of the murders.

Additionally, appellant argues that the State failed to prove burglary since the State offered no proof that he "entered the premises with intent to commit theft." In support of that argument he refers us to his testimony in the record where he claimed that the removal of items of personal property from the residence was for the purpose of concealing the offense.

However, this sufficiency challenge goes to the charge that appellant committed murder in the course of committing burgla-

ry. Burglary is defined in relevant part in the Penal Code as follows:

(a) A person commits an offense if, **without the effective consent of the owner,** he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit **a felony or theft**; .... (emphasis added).

Tex.Penal Code Ann., § 30.02(a)(1).

We believe that there is sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of committing murder in the course of committing burglary.

■ Although the deceased was not available to testify at trial, proof of lack of consent may be established through circumstantial evidence. *See Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Crim.App.1974) (holding that proof of lack of consent to the entry and taking of personal property for burglary prosecutions with intent to commit theft or theft may be made by circumstantial evidence); *see also Fearance v. State,* 771 S.W.2d 486, 511 (Tex.Crim.App. 1988); *Prescott v. State,* 610 S.W.2d 760, 763 (Tex.Crim.App.1981). And, circumstantial evidence of lack of consent was plentiful.

The jury heard evidence that appellant lived at his father's residence from the age of thirteen until he moved to Rusk in 1979. After the move to Rusk, he visited his family's home and spent each Thanksgiving and Christmas there. His relationship with his parents deteriorated about a year prior to the murders, and as a result, he stayed away from his father's home during that time. He visited his family three weeks before the murders because he wanted to borrow money and discuss his marital problems. Appellant stated that his father treated him "cold" so he did not ask for money.

On the day of the murders, appellant telephoned his father's house to verify that his family would be home that night. Then, later that evening he proceeded to sneak up to the back door of the house to, in appellant's own words, "see if it was unlocked." Appellant "discussed his strategy" with Beathard.[4] And then, appellant aimed a gun at his father through a back window of the house and shot him.

Appellant admitted that after he shot his father through the back window of the house, his father "tensed up." Additionally, appellant stated that at that time, his step-mother stood up and began screaming. Immediately afterward, Beathard rushed into the house and killed appellant's step-mother and half brother. The two proceeded to steal various items from the home.

Viewing the evidence in a light most favorable to the verdict, there is ample evidence in the record to support a finding by the jury beyond a reasonable doubt that the entry into the victim's habitation was without effective consent. Appellant's argument to the contrary is meritless.

■ With regard to appellant's argument that the State failed to prove burglary since the State offered no proof that he "entered the premises with intent to commit theft," we find that it is meritless as well. Appellant's statement, that his motive for taking property from the home was merely to conceal his involvement, does not persuade us to the contrary. There is a great deal of evidence that appellant intended to commit a theft of property from the residence of the deceased. Cf. *Palafox v. State,* 608 S.W.2d 177 (Tex.Crim.App. 1979). The testimony of appellant from the trial of his co-defendant was read to the jury and it contained the following excerpt:

Q: In the advanced stages, along with planting the false evidence, did you have any plans with him concerning removing of items from the residence?

A: Yes, sir.

Q: What did you all talk about generally with respect to that?

A: The video equipment and the guns.

* * *

Q: So you all had planned this in advance, is that correct?

A: Yes, sir.

---

4. After Beathard heard appellant shoot, he was supposed to "run in the back door."

Even assuming that appellant's motive in stealing the property was to conceal his involvement in the murders, that fact does not diminish the existence of his intent to unlawfully appropriate the property, without the consent of the owner. *See* Tex.Penal Code Ann., § 31.03(a). Intent and motive are distinct.

The jury was charged upon the law of parties with regard to the part of the capital murder charge that alleged burglary as the aggravating offense. And, there is evidence that Beathard entered the home of the victim at the direction of appellant with intent to kill appellant's step-mother and younger brother.[5]

After reviewing the record as a whole, we find that there is sufficient evidence for rational triers of fact to have found beyond a reasonable doubt that appellant caused the death of his father in the course of committing burglary. *See Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim. App.1988); *Fearance v. State*, 771 S.W.2d 486, 511 (Tex.Crim.App.1988). Accordingly, appellant's fifth point of error is overruled.

Because of our disposition of point of error five, it is not necessary to reach points of error three and four. There is sufficient evidence to sustain appellant's conviction. *Kitchens v. State*, 823 S.W.2d 256, 259 (Tex.Crim.App.1991) (explaining that "[I]t is settled that 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive the verdict stands if the evidence is sufficient with respect to any of the acts charged.' "), and cases cited there in; *and see Davis v. State*, 782 S.W.2d 211, 221 (Tex.Crim.App. 1989); *Selvage v. State*, 680 S.W.2d 17, 21, note 5 (Tex.Crim.App.1984); *Pinkerton v. State*, 660 S.W.2d 58, 62 (Tex.Crim.App. 1983). Appellant's third and fourth points of error are overruled.

Appellant contends in his seventeenth point of error that the trial court erred when it denied his motion to quash the indictment. The indictment charged appellant with murder "in the course of committing and attempting to commit burglary of a habitation." He argues that since burglary of a habitation may be committed with an intent to commit "**a felony or theft**," he did not have notice as to which theory of intent the State was pursuing and as a result could not prepare his defense.

Nevertheless, we have repeatedly addressed this issue before and have concluded that the elements of the aggravating offense in a capital murder charge do not need to be alleged in the indictment even when the defendant presents a motion to quash. *See Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App.1991); *Marquez v. State*, 725 S.W.2d 217, 236 (Tex. Crim.App.1987), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *Hogue v. State*, 711 S.W.2d 9, 14 (Tex.Crim. App.1986), cert. denied, 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986); *Andrade v. State*, 700 S.W.2d 585, 589 (Tex.Crim. App.1985), cert. denied, 475 U.S. 1112, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986); *Hammett v. State*, 578 S.W.2d 699, 707–708 (Tex.Crim.App.1979), cert. dismissed, 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980). By way of example, in *Ramirez v. State*, 815 S.W.2d, at 643, where the defendant had been charged with murder in the course of burglary of a habitation—the same type of charge that was made in the instant case—we explained that:

> The indictment did not specifically allege which burglarious intent appellant had when he committed this offense, nor was the State required to plead the constituent elements of the offense constituting the aggravating feature of capital murder.

Appellant here, raises the same issue. However, we have already addressed the

---

**5.** Appellant judicially admitted, in his testimony at the trial of James Beathard, that he and Beathard had planned the crime to take place in that order. Specifically, the following question

was asked: "[H]ad y'all planned that he would do the inside and you would do the outside?", to which appellant replied: "Yes, sir."

issue in several other cases (*see Ramirez, Marquez, Hogue, Andrade,* and *Hammett,* supra.), and have resolved it against his asserted position. Accordingly, appellant's seventeenth point of error is overruled.

In his sixth point of error, appellant alleges that the trial court erred when it denied his pre-trial motion for a change of venue. His motion alleged that he would not be able to obtain a fair and impartial trial in Trinity County due to prejudice existing in the community. His motion was supported by two affidavits and was controverted by the State.

■■■ A change of venue is proper and consistent with principles of due process when a defendant demonstrates his inability to obtain an impartial jury or a fair trial at the place of venue. *See generally Groppi v. Wisconsin,* 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *and see Henley v. State,* 576 S.W.2d 66, 69 (Tex.Crim.App.1978). However, publicity in the news media does not establish prejudice or require a change of venue per se. *See Johnson v. State,* 773 S.W.2d 322, 324 (Tex.Crim.App.1989); *Beets v. State,* 767 S.W.2d 711, 743; *Faulder v. State,* 745 S.W.2d 327, 338 (Tex.Crim. App.1987); *Freeman v. State,* 556 S.W.2d 287, 297 (Tex.Crim.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978). The test is "whether outside influences affecting the community's climate of opinion as to a defendant are inherently suspect." *See Beets,* 767 S.W.2d at 742; *Faulder* 745 S.W.2d at 338; *McManus v. State,* 591 S.W.2d 505, 517 (Tex.Crim.App. 1979); *Bell v. State,* 582 S.W.2d 800, 810–811 (Tex.Crim.App.1979); *Henley v. State,* 576 S.W.2d 66, 72 (Tex.Crim.App.1978); *James v. State,* 546 S.W.2d 306, 309 (Tex. Crim.App.1977); *see also Ussery v. State,* 651 S.W.2d 767, 772 (Tex.Crim.App.1983).

■■■ The trial court conducted a hearing on this matter on May 16, 1985. Witnesses for appellant testified that they were of the opinion that appellant could not get a fair trial in Trinity County because of the media coverage and because of what they had heard expressed from several persons in the northern Trinity County and Groveton areas about their preconceived opinions of appellant's guilt. However, the record reflects that his witnesses could not recall the names of any of those people. In rebuttal, the State called a number of witnesses from various parts of Trinity County who expressed the opinion that appellant could obtain a fair and impartial trial locally. And thereafter, the trial court overruled appellant's motion for a change of venue. Appellant did not reurge his motion to change venue during voir dire of the jury panel.

■■■ When a trial court is presented with a motion to change venue, the trial judge must act as a fact-finder with regard to the issue presented. *See Cook v. State,* 667 S.W.2d 520, 522 (Tex.Crim.App.1984); Tex.Code Crim.Proc.Ann., Art. 31.04. The trial judge is in a better position than we are to resolve such issues as a result of his ability to observe the demeanor of witnesses and scrutinize their veracity face to face. Consequently, we will affirm the trial court's judgment absent evidence of an abuse of discretion. *Aranda v. State,* 736 S.W.2d 702, 705 (Tex.Crim.App.1987); *Freeman v. State,* 556 S.W.2d 287, 297 (Tex.Crim.App.1977). We conclude that the trial court did not abuse its discretion in overruling appellant's motion for change of venue and in conducting the trial in Trinity County. Appellant's sixth point of error is overruled.

In his twenty-second point of error, appellant alleges that the trial court committed reversible error when it denied his motion for pre-trial orders respecting the jury selection process. In the motion, appellant asked the court to hold a hearing and to pay for an expert witness to testify on behalf of appellant at the hearing. He wanted the court to issue orders granting the following relief:

1. That potential jurors shall not be excluded from jury service at the guilt-innocence phase of the trial by reason of their views on the death penalty, and

2. That a completely separate jury be selected for service at the penalty phase of the trial, if a conviction for capital murder is returned, or, if such be denied.

3. That any jurors who may not be qualified by reason of their views on the death penalty be excused in the event of a conviction for capital murder, and new "death qualified" jurors be selected to take their places, or if both D2 and D3 be denied, that the court enter such orders as will preserve and protect the rights of the Defendant under the Sixth and Fourteenth Amendment of the U.S. Constitution and Art. I Sec. 10 of the Texas Constitution.

He argues that the court's denial of his motion violated his right to a fair and impartial jury which is guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. Nevertheless, we believe that the court acted properly when it denied appellant's motion.

We previously determined, in *Marquez v. State*, 725 S.W.2d 217 (Tex. Crim.App.1987), that:

> there is no state constitutional impediment to striking for cause, prior to the guilt phase of a capital trial, all prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair their duties as jurors at the penalty phase of trial.

Additionally, the United States Supreme Court has held in *Lockhart v. McCree*, 476 U.S. 162, 165, 106 S.Ct. 1758, 1760, 90 L.Ed.2d 137 (1986), that there was no federal constitutional impediment to the same type of action. Further, there is no constitutional impediment to a determination of sentence by the same jury that has determined guilt. *Gonzales v. State*, 466 S.W.2d 772 (Tex.Crim.App.1971). And consequently, we believe that appellant was not entitled to the relief he sought in his motion. His twenty-second point of error is overruled.

In his tenth point of error appellant contends that his challenge for cause to prospective juror Margaret L. Miller, should have been granted pursuant to Tex.

Code Crim.Proc.Ann., Art. 35.16(c)(2). In his brief, he argues that Miller could not keep an open mind or consider arguments against the death penalty itself. However, the trial court disagreed with his assessment of her qualifications.

The record reflects that Miller did not have any personal, moral or religious beliefs against the use of the death penalty as a form of punishment in some types of criminal cases. She testified that she had not formed an opinion or a conclusion as to appellant's guilt or innocence and that she could consider the full range of punishment. However, as appellant points out, Miller did respond that she would not be receptive to an argument against the death penalty itself.

According to Tex.Code Crim.Proc. Ann., art. 35.16, appellant's challenge for cause was insufficient because it failed to allege any fact which rendered the prospective juror incapable or unfit to serve on the jury. When a juror's answers show that she can follow the law and set aside any preconceptions, she is not disqualified. *See Cordova v. State*, 733 S.W.2d 175, 184–185 (Tex.Crim.App.1987), cert. denied, 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988). There is no requirement that a juror be able to consider a defendant's arguments against the validity of a law. Those arguments are more properly addressed to the court.

In addition, appellant cannot show harm since he failed to exhaust his peremptory challenges during the jury selection process and, he did not request additional strikes. *See Bell v. State*, 724 S.W.2d 780, 795 (Tex.Crim.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *see also Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App.1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987) (holding that to preserve error, a defendant must exhaust all of his peremptory challenges, he must be denied a request for additional challenges, and he must identify a member of the jury who is objectionable and who he would have struck with an additional peremptory challenge). Consequently, we will not disturb

the judgment of the trial court regarding this matter. Point of error ten is overruled.

█ In his eleventh, twelfth, thirteenth, fourteenth and fifteenth points of error, appellant alleges that the trial court erred when it excluded five veniremen for cause based on their alleged bias against the imposition of the death penalty.[6] He argues that the State failed to show that the juror's objections to the death penalty would prevent or substantially impair their duties in accordance with their oath.

█ The standard for this type of challenge is whether the juror's views regarding capital punishment would "prevent or substantially impair the performance of their duties as jurors in accordance with the court's instructions and the juror's oath." *See Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Long v. State*, 823 S.W.2d 259, 256 (Tex.Crim.App.1991); *McGee v. State*, 774 S.W.2d 229, 235 (Tex.Crim.App.1989); *Bell v. State*, 724 S.W.2d 780, 794–795 (Tex. Crim.App.1986); *Williams v. State*, 622

---

**6.** The veniremen were Dennis Wayne Morris, H.W. Keen, Velma N. Stafford, Benjamin F. Johnson and Rossetta Eleby.

Venireman Morris testified that he could never, under any circumstances, return a verdict which assessed the death penalty. He testified that his feelings against the death penalty were based on a strong personal belief that he had held ever since he was old enough to understand it and that his deliberations would be influenced by his strong belief against the death penalty. He further testified that no matter how hard and terrible the facts might be, his feelings against the death penalty would still control. Defense counsel asked Morris:

Q: ... I gather that even if you were given an oath and you took an oath and swore. I'm going to give a true verdict according to the law and evidence in the case that you would, I hate to say this, go against your oath and give a false verdict?

A: Yes, sir, because I couldn't sentence any one to death.

Based upon this testimony, the State challenged Morris for cause which was sustained by the trial court. Defense counsel generally accepted the trial court's ruling.

Venireman Keen stated that he could never, under any circumstances, return a verdict assessing the death penalty. He testified that he had been opposed to the death penalty all of his life, that it was a strong conviction, that he did not feel he had the right to condemn somebody to death, that no matter what the facts were at trial he could never return a verdict assessing death, that because of his belief his deliberations would be affected, that the prospect of an available death penalty would even affect his deliberations at the guilt phase of the trial although he would not give a false verdict and he testified that he would not vote on all the issues even if they were supported by evidence and in spite of his oath. The State challenged Keen for cause and its challenge was sustained by the trial court. Defense counsel generally accepted the trial court's ruling.

Venireman Stafford testified that she did not believe in capital punishment. She testified that was a position which she has maintained for a long time, that she did not believe in taking another person's life, that she had a strong conviction against the death penalty, that her belief would affect her deliberations and that resultantly, her verdict would be influenced. She further stated that she could say yes to punishment but not to the death penalty. Keen was challenged for cause by the State, and the challenge was sustained by the trial court. Defense counsel generally excepted to the trial court's ruling on the grounds that Stafford was qualified to sit at least throughout the guilt or innocence stage of the trial.

Venireman Johnson testified that he had worked for T.D.C. for nineteen years, that he was opposed to the death penalty, that he held this belief against the death penalty for most of his adult life and that his beliefs on the death penalty could influence his deliberations as a juror. Here is an excerpt from his testimony during voir dire:

Q: Do you feel like you could ever, and I'm not talking about this case, I'm just talking about any case, do you feel like you could ever sit on a jury and give the death penalty?

A: Well. I would say, no, sir. Because like I said, I've been working with these guys for nineteen years ... I just wouldn't want to kill nobody, you know.

The State challenged Johnson for cause and the challenge was sustained by the trial court. Defense counsel did not direct any questions to the prospective juror.

Venireman Eleby testified that she could never, under any circumstances, return a verdict assessing the death penalty, that she had held this feeling most of her adult life, that it was a strong belief, that she "wouldn't want nobody to get the death penalty," that her deliberations would be influenced, that it would affect her verdict and that without regard to the evidence presented, she could never vote "yes" to a special issue knowing that appellant would get the death penalty. The State challenged Eleby for cause and the challenge was sustained by the trial court. Defense counsel generally excepted to the trial court's ruling and stated that he felt that Eleby was at least qualified to serve throughout the guilt-innocence phase of the trial.

S.W.2d 116, 118 (Tex.Crim.App.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). A trial court's decision to sustain such a challenge for cause is due great deference and will not be disturbed on appeal so long as it is not a clear abuse of discretion. *See Long v. State*, 823 S.W.2d 259, 265 (Tex.Crim.App.1991).

The record reflects that all five prospective jurors responded similarly on individual voir dire. Their answers to questions by counsel included statements which indicated that: (1) they could never return a verdict which assessed the death penalty; (2) their belief against the death penalty was strong and personal; (3) their deliberations would be influenced by their belief; (4) they had held this belief most of their lives; and (5) they would violate their oaths and return a false verdict. Based upon their testimony, the State challenged them for cause which was sustained by the trial court. Defense counsel either generally accepted or took exception arguing that the individual would be qualified to serve at the guilt-innocence phase.

After reviewing the record, we cannot say that the trial court abused it's discretion because it appears that each of the five jurors named were subject to challenge for cause under Tex.Code Crim.Proc.Ann., Art. 35.16(b)(1) and (2) as a result of their bias against the punishment law. *See Briddle v. State*, 742 S.W.2d 379, 384 (Tex. Crim.App.1987), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Faulder v. State*, 745 S.W.2d 327, 341 (Tex. Crim.App.1987). When a juror can determine guilt but cannot assess the death penalty, he may be excluded when the State uses a bifurcated trial system as in Texas. *See, e.g., Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *May v. State*, 738 S.W.2d 261, 270–271 (Tex. Crim.App.1987), cert. denied, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). The prospective jurors were biased against the punishment law providing for the death penalty and their views on the death penalty would have impaired their performance as jurors. *See Cuevas v. State*, 742 S.W.2d 331, 334 (Tex.Crim.App.1987), cert. denied, 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988); *see also Briddle v. State*, 742 S.W.2d 379, 385; *Faulder v. State*, 745 S.W.2d 327, 341; *Soffar v. State*, 742 S.W.2d 371, 378–379 (Tex.Crim.App.1987), cert. denied, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989). Applying the appropriate standard to the record in this case, we perceive no reversible error. *See Crane v. State*, 786 S.W.2d 338, 344 (Tex. Crim.App.1990) (explaining that: "[A] trial court's decision to excuse such a potential juror for cause under *Witt* should not be reversed absent a clear abuse of discretion."). Appellant's eleventh, twelfth, thirteenth, fourteenth, and fifteenth points of error are overruled.

As his eighteenth point of error appellant contends that the trial court committed reversible error when it limited his voir dire of prospective juror Jesse Gibson. Appellant sought to call a witness on voir dire in order to impeach Mr. Gibson but his request was denied. For this reason he alleges that he was denied his right to a fair and impartial jury.

The record reflects that after the State concluded its voir dire of prospective juror Jesse H. Gibson, defense counsel questioned Gibson. Appellant's counsel questioned Gibson to determine whether Gibson had formed an opinion as to appellant's guilt or innocence. He also questioned Gibson on whether he had made statements about appellant to anyone including his present boss, A.G. Walker. Gibson responded in the negative.

Shortly thereafter, defense counsel made an offer of proof. He sought to subpoena A.G. Walker so that Walker could testify that he heard Gibson say that "... he felt appellant was guilty, that he would like to shoot appellant himself, and that he hopes appellant gets the needle." His offer of proof was denied by the trial court. The trial court also denied appellant's request to strike Gibson for cause. Consequently, appellant complains that he was required to use a peremptory challenge to remove Gibson from the panel.

Nevertheless, even if error occurred, appellant cannot show harm in the instant

case. Appellant cannot show harm since he did not exhaust all of his peremptory challenges and consequently any alleged error is not preserved for our review. *See Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App.1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987) (holding that to preserve error, a defendant must exhaust all of his peremptory challenges, he must be denied a request for additional challenges, and he must identify a member of the jury who is objectionable and who he would have struck with an additional peremptory challenge). Appellant's eighteenth point of error is overruled.

In his nineteenth point of error, appellant complains that the trial court neglected its duty to protect his right to a fair trial when it denied his request to call witnesses to prove that juror Jesse H. Gibson had lied on voir dire. As discussed in point of error eighteen, appellant failed to show harm in being forced to use one of his peremptory challenge on Gibson. Thus, point of error nineteen is overruled.

■ The appellant's twentieth point of error alleges that the trial court committed reversible error when it failed to require the State to make an election of the count in the indictment on which it wished to charge the jury. He further argues that the trial court had an obligation to order the State to elect upon appellant's timely motion, and that the trial court's denial was reversible error.

The indictment charged appellant with the capital murder of his father, Gene Wilford Hathorn, Sr., by three separate theories. The distinct theories included: (1) murder in the course of robbery and burglary; (2) murder for remuneration or the promise of remuneration; and (3) murder for hire. After the State presented its case in chief, appellant made a motion requiring the State to elect between counts or theories of prosecution, which was denied by the trial court. At trial, the jury found appellant guilty of capital murder under two of the theories charged in the indictment: (1) murder in the course of burglary;

and (2) murder for the promise of remuneration.

Appellant relies on Tex.Penal Code Ann., § 3.04(a). That code section provides:

Whenever two or more offenses have been consolidated or joined for trial under section 3.02 of this code, the defendant shall have a right to a severance of the offenses.

However, it is apparent to us that appellant has misconstrued that section. Section 3.04(a) applies where "two or more **offenses** have been consolidated or joined...." In the case at bar, appellant was charged in the indictment with committing only one offense, capital murder of Gene Hathorn, Sr.

■ According to Tex.Code Crim.Proc. Ann., Art. 21.24(b), a count may contain as many separate paragraphs charging the same offense as necessary. We have held and continue to hold that the indictment may and should be comprised of as many counts (paragraphs) as necessary to meet the contingencies of the evidence. *See Thomas v. State*, 621 S.W.2d 158, 162 (Tex. Crim.App.1980); *Jurek v. State*, 522 S.W.2d 934 (Tex.Crim.App.1975), affirmed, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *and Cf. Davis v. State*, 782 S.W.2d 211, 221 (Tex.Crim.App.1989); *Selvage v. State*, 680 S.W.2d 17, 21, note 5 (Tex.Crim. App.1984); *Pinkerton v. State*, 660 S.W.2d 58, 62 (Tex.Crim.App.1983). Therefore, we believe that the court properly charged the jury on two different ways that appellant may have committed the offense according to the evidence. Appellant's twentieth point of error is overruled.

Appellant complains in his sixteenth point of error that the trial court committed reversible error when it commented on the weight of the evidence in its charge. He alleges that the court commented on the weight of the evidence by assuming the existence of his father's estate. The pertinent part of the trial court's charge is set forth below:

Two. Now if you believe from the evidence beyond a reasonable doubt that the defendant, Gene Wilford Hathorn, Junior, on or about the ninth day of October,

1984, in Trinity County, Texas, did intentionally cause the death of an individual, Gene Hathorn, Sr., by shooting him with a gun and you further find that said Gene Wilford Hathorn, Junior, did cause the death of Gene Hathorn, Sr., for the promise of remuneration, to wit: The Estate of Gene Hathorn, Sr., then you will find the defendant, Gene Wilford Hathorn, Junior, guilty of capital murder as charged in Count 2 of the indictment. (emphasis added).

We agree that it "is the right of all defendants to put the state to its proof." *Marlow v. State*, 537 S.W.2d 8, 10 (Tex.Crim.App.1976). And, it is well settled that it is not proper for a trial court to assume that a fact has been proved against a defendant when charging the jury in a criminal case. *Id.*, at 9. However, while it is true that a trial court must not instruct the jury in a manner which would constitute either a comment on an element of the offense or an assumption of a disputed fact unless the fact comes within an exception to the general rule, *Andrews v. State*, 652 S.W.2d 370, 374 (Tex.Crim.App.1983), the court here neither commented on an element of the alleged offense nor assumed a disputed fact. There was no comment on the weight of the evidence.

The charge was designed to request that the jury determine whether appellant committed the murder "**for** the promise of remuneration". (emphasis added). Tex.Penal Code Ann., § 19.03(a)(3). The State relied upon article 19.03(a)(3) of the Penal Code which states in pertinent part:

(a) A person commits an offense if he commits murder as defined under section 19.02(a)(1) of this code and:

(3) the person commits the murder **for** remuneration or the promise of remuneration ... (**emphasis added**).

We believe that the statute relied upon by the State in the prosecution of appellant under this indictment requires proof of remuneration or the promise of remuneration.

Consequently, we believe that the trial court's use of the words "The Estate of Gene Hathorn, Sr." instead of the words "The Alleged Estate of Gene Hathorn, Sr.", or the words "The Estate of Gene Hathorn, Sr., if any", was not an assumption of a disputed fact by the court, nor was it a comment on an element of the offense in the charge.

Moreover, there is ample evidence of the existence of the estate and no evidence contradicting its existence. The State introduced appellant's judicial confession wherein appellant admitted that his motivation for murdering his father was his desire to receive his father's estate. The judicial confession was taken from appellant's testimony during the trial of his co-defendant Beathard and in it appellant answered questions in the following exchange:

Q. Did you ever talk about any type of payment to James Beathard for him going along with you?

A. Yes sir.

Q. And what was his discussion in that respect?

A. He said he wanted twelve thousand five hundred dollars if I recovered the money.

\* \* \* \* \* \*

Q. Was he supposed to receive this out of the estate funds?

A. Yes sir.

\* \* \* \* \* \*

Q. And you were going to receive, I take it, the bulk of the estate?

A. Yes sir."

And further, Hathorn Sr.'s attorney testified to the existence and content of the estate.

The language which appellant complains of was not a comment on the weight of the evidence. Accordingly, appellant's sixteenth point of error is overruled.

In his seventh point of error, appellant challenges the sufficiency of the evidence to sustain the jury's affirmative answer to Special Issue No. 2.[7] In his brief, appellant

---

7. The term "Special Issue No. 2" as it is used here refers to Tex.Code Crim.Proc.Ann., Art. 37.- 071(b)(2). which reads:

argues first that at the time of the offense he was acting under a sort of extreme emotional pressure brought about by his hatred of his father. And second, he argues that his nonviolent nature, his cooperation with authorities and his lack of a prior criminal record, prove that he would not likely commit future acts of violence. Appellant concludes that the combination of these two arguments establishes the fact that there is insufficient evidence to support the jury's verdict on special issue number two. We disagree.

The standard for reviewing a jury's answer to a special issue presented in the punishment phase of a capital murder trial is whether the evidence, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the finding beyond a reasonable doubt. *See Rivera v. State,* 808 S.W.2d 80, 94 (Tex.Crim.App.1991); *Livingston v. State,* 739 S.W.2d 311, 340 (Tex. Crim.App.1987), cert. denied, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Keeton v. State,* 724 S.W.2d 58, 60–61 (Tex. Crim.App.1987). Applying that standard, we believe that the evidence in the instant case is sufficient to sustain the jury's answer.

The record reflects a great deal of evidence which tends to indicate that appellant would constitute a continuing threat to society. Appellant planned and participated in the brutal murder of his entire family. He was tried and convicted of the capital murder of his father. He expressed no remorse for the killings until after his arrest. And the Rusk Chief of Police, an officer from the Rusk police Department, a deputy sheriff from Cherokee County and the Director of Security from the Rusk State Hospital where appellant was employed, testified that appellant had a bad reputation for being a peaceful and law-abiding citizen.

The State introduced evidence of appellant's past violent conduct by calling as witnesses Earl Ray Havard, Joyce Ashton and Jimmy Goodwin. Those witnesses testified to one particular incident where appellant had beaten another man with numbchucks because he failed to ask appellant for permission to have a drink of whiskey. All three witnesses described appellant as a violent person.

Four witnesses, Mike Hail, Keith Kennedy, Mike Odom and Sam Shingle, testified about beatings they had received from appellant. Three of those witnesses, Hail, Kennedy and Odom, testified that appellant beat them after accusing them of being police informants. They also testified that appellant was involved in drug sales. And, the fourth witness, Shingle, testified that he was severely beaten and forced by appellant to write a check for $500.00.[8] Shingle's injuries after the beatings required surgery and included four fractures in the left orbital rim and damage to the fifth cranial nerve.

The State played tapes for the jury of appellant's conversations with witness Neil Shiver, a former patient of the Rusk State Hospital in Rusk, Texas and friend of appellant. Shiver consented to being wired by authorities so that conversations which he had with appellant could be recorded. The tapes were made on November 1st and 2nd of 1984, prior to appellant's arrest in a Houston motel room. At the meeting, Shiver pretended that he was going to help appellant obtain an anonymous name and social security number. If Shiver could not help him get new identification, appellant stated on the tapes that he was going to go to Mexico.

The record reveals that appellant spoke directly about future dangerousness during the taped conversations mentioned above. On those tapes, he threatened to kill Beathard, Beathard's children and other of his relatives if Beathard talked to the police. He spoke about killing the prosecutor's children if the prosecutor did not destroy the evidence in the case. He stated that he

"whether there is a probability that the defendant would commit criminal activities of violence that would constitute a continuing threat to society."

8. Sam Shingle testified that he had to write several checks to Hathorn before the final check because the previous checks were ruined by his blood.

had a hit list of about ten people he wanted to kill. The first on his list was Sam Shingle, a robbery victim who had filed charges against appellant, followed by the Rusk Chief of Police and the prosecutor. He also talked at length about how to kill these people. He discussed shooting them, cutting their head off, grinding up the bodies, putting their head in acid, burning their bodies, "O.D.ing" (overdosing) them on cocaine or heroin, poisoning them with acid and torturing them with electricity. In addition, he mentioned:

> [t]his is my plan for the future. What's happened has happened and is in the past. That's over with. We'll get the money. We'll go on to something else. But Mr. Sam Shingle has got to go. What we will do is slip up there. He works nights and his wife works days, and we'll swipe a van, or borrow a van or something, and cover the license plate on it. Come up there during the daytime, and knock that M.F. in the head, and put him in the van, and drive away up to Mississippi and blow his f...ing brains out. Could be easy enough to go up to his window and shotgun his ass. But then if he came up dead, they'd be, really dogging my ass then, you know. You understand? But that is what my plans are.

Kenneth Moore, Sheriff of Trinity County, also testified on the State's behalf. He testified that he thought appellant was in hiding during the Houston motel meeting. He testified that appellant had changed his appearance by dyeing his hair and shaving off his goatee. His testimony supported the content of the taped conversations wherein appellant admitted to changing his appearance in order to evade arrest.

Having reviewed all of the evidence in a light most favorable to the verdict, we find there is sufficient evidence in the record for a rational trier of fact to have concluded beyond a reasonable doubt that there was a probability that appellant would commit criminal acts of violence that would

constitute a continuing threat to society. *See Keeton v. State*, 724 S.W.2d at 64. His seventh point of error is overruled.

 In point eight appellant alleges that the court erred when it overruled his objection to the jury charge at the punishment phase of the trial. Appellant objected to the court's charge and requested inclusion of special issue number three. That special issue is found at Tex.Code Crim. Proc.Ann., Art. § 37.071(b)(3) and it states:

> if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Appellant claims that his testimony at trial[9] raised the issue of provocation in the following instances: he testified that the primary motive for the killings was hatred for his family which he fostered since he was nine years of age; he testified that his father beat him nightly during his first two years of grade school and on one occasion for going to church; he testified that further provocation was provided when his father had shot and killed his Shetland pony and a dog (appellant had to bury the dog); and he testified that his father was violent and carried a weapon.

However, the record does not reflect any abusive conduct by the victim towards appellant which occurred within the years, or months, preceding the instant offense. No evidence exists in the record regarding the victim's conduct just prior to his death that would suggest provocation.

We have held previously, that in order to raise the issue of provocation, as provided in Art. 37.071(b)(3), there must be evidence of the deceased's conduct just prior to his death and we have held that the evidence must be sufficient to be considered provocation. We believe that the evidence of appellant's father's acts, upon which he relies, falls short of evidence of provocation, for purposes of an Art. 37.071(b)(3) special issue, because it indicated commission of acts which were too remote from

9. While appellant did not testify during the guilt-innocence phase of the trial, he did take the stand during the punishment phase.

the instant offense. *See Marquez v. State,* 725 S.W.2d 217, 224–225 (Tex.Crim.App. 1987); *Hernandez v. State,* 643 S.W.2d 397, 401 (Tex.Crim.App.1983). Therefore, we are unable to conclude, from our review of the record, that the trial court's decision to refuse the provocation issue was erroneous. Appellant's eighth point of error is overruled.

In point of error twenty-one appellant contends that the prosecutor's argument at the guilt-innocence stage of the trial was so manifestly improper and inflammatory as to require reversal. He claims that the prosecutor argued for the death penalty during the guilt-innocence stage of the trial and further asserts that the error of the argument could not be cured by an instruction. He argues that objection by his counsel was not required because the error was fundamental and the harm caused was egregious. Appellant cites *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

At the end of the State's closing argument after the guilt/innocence phase of the trial, the record reveals that the prosecutor stated:

> Now he's trying to say that because I admitted my crime, the penalty should be different. And you heard me read that testimony. Because of that admission, is Gene Hathorn, Senior less dead? Is Linda Sue ever going to cook supper again for her family like she did? Because of his testimony? Is Marcus ever going to play basketball again, just because when he knew he was caught, he tried to squirm out of the proper punishment for his crime, because he knows the death penalty is staring him in the face. He knows he deserves it. He's trying to get out of it and he's begging for life.

Defense counsel failed to object.

The four proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument from opposing counsel; and (4) plea for law enforcement. *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991); *Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Crim.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Todd v. State,* 598 S.W.2d 286, 296–297 (Tex.Crim.App.1980); *Dunbar v. State,* 551 S.W.2d 382 (Tex. Crim.App.1977); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973). After reviewing the record, we find that the comments by the State in argument, which may have related to the death penalty, were invited by appellant and that they can reasonably be interpreted as answer to argument presented by appellant in his opening statement. *See Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Crim.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

After the State rested it's case on the guilt of appellant, but prior to the State's presentation of the above argument which is complained of here, counsel for appellant made an opening statement. At the conclusion of appellant's opening statement the defense rested it's guilt-innocence case. No further witnesses were called between appellant's opening statement and the closing argument for the State. In appellant's opening statement counsel made remarks which we believe invited the State's argument complained of here. Counsel for the defense stated:

> I can say further now, and I am specifically authorized to say this now, we think the appropriate punishment when we get around to it in this case would be life. Isn't that right? You've really known that from way back in the beginning, and that has been our position, from the beginning. So what do we have here? For the last three days, and for the rest of this trial, from the State's standpoint, it has one and only one objective. Death. Death. Death. We see life, that is all that we see. You can see that Gene Hathorn as he stands before you now, sits before you like a butterfly in a spiderweb, struggling for life. Now you've seen a lot of evidence in this case. A lot of evidence that was completely unnecessary to bring before you, because every one of you knew that we admitted the murder.

The State was entitled to answer that argument by appellant and we believe that

the comments by the State which are in question here are no more than that; the comments by the State were invited by the defense. *See Nethery v. State*, 692 S.W.2d, at 703. Furthermore, appellant did not object at trial and we find that the argument was not manifestly improper as to require a reversal. Appellant's point of error twenty-one is therefore overruled.

In his first point of error, appellant alleges that he was rendered ineffective assistance of counsel. He directs our attention to eleven examples of deficiencies in his counsel's representation which he claims denied him the level of effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution. Having reviewed the record before us, and considering the strict standards for determining that counsel was ineffective, we cannot say that appellant was rendered ineffective assistance. Appellant has not met his burden of proof.

The standard, for determining whether a defendant has been rendered ineffective assistance by counsel, was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* Court explained that a defendant making this type of claim must show: (1) that his counsel's assistance was deficient; and (2) that but for his counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S., at 693, 104 S.Ct., at 2068. Additionally, since the Texas constitutional and statutory provisions do not provide any greater protection than the Federal provisions, Texas has adopted the *Strickland* two prong test. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986).

■ In his first example of an alleged deficiency, appellant contends that his trial counsel relieved the State of a major portion of its burden of proof when he revealed to the jurors that appellant was guilty of murder. However, we believe that defense counsel's conduct in conceding appellant's guilt in an apparent attempt to

get the jury to find appellant guilty of a lesser offense can reasonably be explained as trial tactic. Although it was apparently unsuccessful, it was logical when the overwhelming strength of the State's case was considered. We do not believe that appellant has met his burden of proof as to either of the *Strickland* prongs with this example.

■ In another example, appellant points out that his counsel failed to object to the prosecution's misstatement of the law applicable to parties, and as a result, he alleges he was denied a fair trial. During voir dire, the State instructed the prospective jurors that they could use the law of parties in answering the punishment special issues. This Court has held that Articles 7.01 and 7.02 of the Penal Code, wherein the law of parties and the law of criminal responsibility for the conduct of another are addressed, are inapplicable to the punishment phase of the trial. *Green v. State*, 682 S.W.2d 271, 286 (Tex.Crim. App.1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Nevertheless, the record reveals that the comment was made during general voir dire, not individual voir dire, and it was never again brought up at trial. Additionally, the trial court did not instruct the jury on the law of parties in it's punishment charge and gave the jury no indication that the law of parties was applicable to that phase of the trial. With that in mind and giving due weight to the strength of the State's case against appellant himself at punishment we are not able to say, from our review of all the evidence before us, that but for this error by appellant's counsel, the result of the proceeding would have been different.

As we have held in *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986) and in *Moore v. State*, 700 S.W.2d 193, 205 (Tex. Crim.App.1985), isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective. Further, the second prong of *Strickland* requires that an appellant show that but for the deficiency of counsel, the result of the proceeding would have been

different. No such showing is made here by appellant.

■ Appellant next contends that his counsel failed to cross-examine and object to the exclusion of prospective juror Benjamin Johnson who stated that he had conscientious objections to the death penalty. Appellant believes that this juror could have been rehabilitated. However, the record indicated that Johnson's opinions were so resolute, that it is highly questionable whether he could have been rehabilitated. Appellant has not shown that it was error for trial counsel not to attempt to rehabilitate Johnson. Additionally, this contention was dealt with in our address of points of error eleven through fifteen and we found no reversible error.

A fourth allegation cited by appellant was that his counsel entered into an agreement with the State to exclude jurors who had formed preconceived opinions of appellant's guilt or innocence rather than challenging the prospective jurors for cause. However, no proof exists for appellant's allegation of such an agreement. He points to no proof in the record. Accordingly, we find that appellant has not met his burden under *Strickland* with this example.

■ In appellant's fifth example, he asserts that counsel failed to require the Court to instruct the jurors pursuant to Tex.Code Crim.Proc.Ann., Art. 35.17(2) prior to individual voir dire. Article 35.17(2) states in pertinent part:

> In a capital felony case in which the State seeks the death penalty, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion.
>
> . . . .

However, after reviewing the record, we are convinced that even if the trial court erred and appellant's counsel failed to bring that fact to its attention, no harm could have resulted from the error. Questions of the type identified in Article 35.17(2) were propounded to the jury panel as a whole by the attorneys prior to individual voir dire. And, the jury received instructions on these issues in the charge at the close of the guilt/innocence stage. As a result, appellant cannot meet the burden of the second prong of *Strickland*, that but for the alleged deficiency the result of the proceeding would have been different. We believe that no harm can be shown here since any error has been cured. In any event, appellant certainly has not met his heavy burden with this example.

In his sixth example appellant asserts that he was egregiously harmed when his counsel failed to request an out-of-court hearing on the voluntariness of appellant's confession [10] to which, he alleges, he was constitutionally entitled. *See, e.g., Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). He argues that this failure, on the part of his counsel, allowed damaging evidence to come before the jury. However, there are any number of legitimate reasons that competent and effective counsel might have made the same decision, not the least of which could have been that the hearing would have been futile since the record shows that the confessions were clearly voluntary. Appellant here has simply not met his heavy burden to prove that his counsel's representation with respect to this example was deficient, nor has he proved that the deficiency resulted in any prejudice.

In example number seven appellant alleges that counsel failed to object to various instances of testimony regarding extraneous offenses which, he alleges, inflamed the juror's minds. He calls our attention to various cases wherein we have held that

10. Appellant does not specifically tell this Court which confession he is talking about and he does not cite us to the record where the confession he complains of was admitted. Therefore we find ourselves at great disadvantage in attempting to answer his argument. While appellant is not entitled to force this Court to go out of it's way to determine what he complains of, we have nevertheless, in this case, done our best to answer the argument presented in his brief. Tex.R.App.P. 74(f).

counsel's failure to object to a series of extraneous offenses is sufficiently egregious an error to show harm to an appellant and warrant reversal. *See Weathersby v. State,* 627 S.W.2d 729, 730 (Tex.Crim. App.1982); *Cude v. State,* 588 S.W.2d 895, 896 (Tex.Crim.App.1979); *Ruth v. State,* 522 S.W.2d 517, 519 (Tex.Crim.App.1975).

Appellant complains that counsel failed to object or move for mistrial when his grandmother testified during the guilt-innocence phase of the trial that he was "in narcotics." He alleges that his counsel allowed the State to impeach Cathy Ross by failing to object to questions from the State about drug deals and drug sales between appellant and Beathard. Appellant further complains that the state was allowed to admit evidence of an extra-marital affair with his girlfriend Shirley Ponder. And finally, he complains that his counsel allowed the State to admit testimony from the Sheriff of Trinity County to the effect that he agreed with the district attorney's argument in the trial of Beathard that appellant was "the scum of the earth."

Once again we note that a defendant who wishes to prevail by making this type of claim must show: (1) that his counsel's assistance was deficient; and (2) that but for his counsel's deficiency the outcome of the proceeding would have been different. *Strickland,* (supra). Appellant claims that proof of both of the prongs is met in each of the points he has identified. However, we disagree.

▇ It is true that appellant's grandmother gave testimony which confirmed her suspicion that appellant may have been "in narcotics," and it is true that appellant's counsel did not object. However, appellant's grandmother initiated that testimony without solicitation from the prosecuting attorney. This testimony came as a result of questioning about the development of problems between appellant and his father, the victim. While counsel for appellant could have objected to that testimony, considering the overall strength of the State's case, we cannot rule out the possibility that counsel purposefully did not object as a result of a conscious choice in order to further a calculated trial strategy of openness and honesty before the jury.

Similarly, counsel for the defense did not object when the district attorney questioned Cathy Ross about whether she had previously testified that appellant and Beathard had been involved in drug deals together. However, considering the strength of the State's case, and the fact that appellant had made judicial admissions to involvement with drugs, we cannot say that counsel's failure to object here was an example of deficient performance. Additionally, Ms. Ross actually answered the district attorney's question in the negative—she said she did not remember saying such things. Thus, we cannot say that the failure of counsel to object to the questions themselves was so deficient as to undermine confidence in the result of the trial. *Strickland,* 466 U.S., at 686, 104 S.Ct., at 2064.

▇ Appellant also complains that his counsel did not object to the introduction of testimony inferring that although appellant had been married he had nevertheless maintained an extramarital affair. In fact, there was only testimony that appellant and Shirley Ponder had "gone together" as "boyfriend and girlfriend." Moreover, such evidence was not evidence of extraneous offenses and, appellant's relationship with Ms. Ponder proved to be relevant in an inextricable way to the issues presented in the case. For example, appellant drove Ms. Ponder's car the night of the murders, one of the murder weapons was recovered from her car, appellant went to her house after the murders, and she was present during part of the time that Neil Shiver was secretly recording appellant in the hotel room as part of the investigation. We simply cannot say, based upon the record before us, that counsel's performance was "deficient" for his failure to seek exclusion of this evidence.

▇ Appellant complains that his counsel did not object to testimony elicited from the Sheriff of Trinity County to the effect that he agreed with the district attorney's argument, during the trial of James Beathard, that appellant was "the scum of the

earth." However, that testimony appears to have been elicited in response to cross examination regarding the witnesses' feelings about the district attorney's argument in the Beathard case. In that respect, it appears to have been invited. Further, in light of the overall strength of the State's case, we cannot say that counsel's failure to object, to this evidence or to the other evidence that we have discussed, was due to deficient performance on his part. And finally, in light of the vast evidence of appellant's guilt presented at this trial we cannot say that the evidence complained of by appellant resulted in actual prejudice or that the outcome of the trial would have been any different without it.

We find no merit in appellant's arguments with regard to these examples. Appellant has simply not met the heavy burden required by *Strickland.*

Appellant goes on to list other actions and inactions which he claims are demonstrative of his counsel's ineffective representation. These last four examples are generally multifarious. Some of the actions complained of have already been addressed in other points of error. Still others fail to include fair, condensed Statements of the facts which are pertinent, and fail to discuss the facts and authorities on which appellant relies to maintain the issues presented. *See* Tex.R.App.P., 74(f)(1) & (2). Nevertheless, we have reviewed the complaints and we find that, without more, they do not meet the heavy burden on an appellant in order to prevail with an effectiveness of counsel claim on direct appeal. *See Strickland v. Washington,* 466 U.S., at 688–689, 104 S.Ct., at 2064–2065.

When a totality of the circumstances is considered, appellant has not shown in the record that defense counsel was ineffective at trial nor has he shown that, but for his counsel's alleged deficiencies, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068; *Black v. State,* 816 S.W.2d 350, 357 (Tex.Crim.App.1991); *Hernandez,* 726 S.W.2d at 56–57; *Butler v. State,* 716 S.W.2d 48, 55 (Tex.Crim.App. 1986); *Wilkerson v. State,* 726 S.W.2d 542,

548 (Tex.Crim.App.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Smith v. State,* 676 S.W.2d 379, 385 (Tex.Crim.App.1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1986).

The record reflects that appellant's trial counsel conducted an effective defense for appellant. Appellant's counsel filed fifteen pre-trial motions including a request for a change of venue, numerous discovery requests, an attack on the indictment and a motion dealing with the jury selection process regarding "death qualified" juries. Defense counsel received favorable rulings from the trial judge except on the change of venue and jury selection process motions. His counsel cross-examined eleven of nineteen State witnesses at the guilt innocence phase and all but one of the fifteen State witnesses at the punishment phase. Counsel made objections and motions throughout trial and several of these were sustained. Finally, defense counsel consulted with appellant, employed investigators and hired an expert witness.

We cannot say from our reading of the record before us that appellant's counsel was ineffective. Point of error one is overruled.

Appellant's second point of error alleges that he was denied his constitutional right to a fundamentally fair trial and relies on *Estes v. State,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Appellant incorporates the facts, arguments and authorities in points of error one and six. We have previously addressed and overruled those points of error. Consequently, appellant's second point of error is overruled.

In his ninth point of error appellant alleges that the trial court erred when it denied him the right to represent himself on appeal. He urges that the right to self-representation is one of constitutional dimension and relies on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), *Webb v. State,* 533 S.W.2d 780, 783–784 (Tex.Crim.App.1976), and *Hawkins v. State,* 613 S.W.2d 720, 723 (Tex.Crim. App.1981), cert. denied, 454 U.S. 919, 102 S.Ct. 422, 70 L.Ed.2d 231 (1981), wherein

accused persons' right to self representation has been sustained.

Appellant initially presented a litany of pro se motions to the court in which he repeatedly requested that: (1) his counsel be dismissed; (2) new counsel be appointed; and (3) if new counsel was not appointed that he be allowed to proceed pro se. However, his next to last group of motions filed with the court requested that all of his previous motions be stricken and asked that appellant be allowed to proceed pro se without making mention of any underlying desire to have the assistance of counsel. After those motions were filed, the court held a hearing wherein it granted appellant's motion to strike his previous motions.

At that hearing, over objection of appellant, the court decided not to allow appellant to just proceed on appeal by himself, pro se. Instead the court explained to appellant that it felt obligated by the Constitution to ensure that he had competent legal counsel to assist him. The following exchange took place:

BY THE COURT: Now, Appellant's Motion Requesting Permission to Proceed Pro Se, I believe, Mr. District Attorney, do you have anything to, or either one of you to say on this?

BY MR. PRICE: I would prefer that Mr. Hathorn would.

BY THE COURT: Go ahead.

BY THE DEFENDANT: Well, Your Honor, it's my understanding that under *Baretta versus California* [11], that I have a right to proceed pro se and represent myself on appeal, and I would urge the Court to allow me to do so.

BY THE COURT: Any response, Mr. District Attorney?

BY MR. PRICE: Other than, Your Honor, obviously, it being a capital murder conviction, and going through the appeals process, which is a very involved and quite complex procedure, I would just obviously, or point out the obvious, which is, I feel like personally, the

man needs some legal counsel and I have no objection, of course, to whatever the Court might do, but I would just think that he probably does need legal counsel to assist him, and as far as him filing a pro se brief, well, that too, I guess is his prerogative and we don't have any objection to that—

BY THE COURT: Right.

BY MR. PRICE:—but, I think he also needs legal representation.

BY THE COURT: All right.

BY THE DEFENDANT: My response on filing a pro se brief, Your Honor, is, that I'm aware that I could file that, even though I do have assistance of counsel. However, it's come to my knowledge that generally the Court of Criminal Appeals does not generally consider pro se briefs by inmates when they have had a brief filed by their attorney of record. And Thus, I would reurge the Court to allow me to proceed pro se, under *Baretta versus California.*

BY THE COURT: Okay, well, I'm going to deny that in part, well, deny it generally, and will proceed this way. I'm going to appoint, you know, as I told you earlier, an attorney to come see you, regarding representation. He can assist you in any way that you and he decide, or that you decide. Okay? But, just generally, due to the nature of this sentence, I don't believe that the Court can Constitutionally allow you to just proceed by yourself, pro se. And, so, I'm not going to, I'm going to deny it, and that doesn't prevent you from, you know, filing a pro se brief if you want to or whatever. I think this will probably work itself out when you and your, the attorney get your heads together on it anyway.

BY THE DEFENDANT: Thank you, Your Honor.

 It is well settled that a defendant has the right to prosecute his legal defense, both through trial and appeal, on

---

**11.** Appellant refers to *"Baretta versus California"*, however, we believe that it is apparent that appellant has mistaken the name "Faretta" from the United States Supreme Court case styled *"Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)" for *"Baretta."*

his own, without the aid of counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Webb v. State,* 533 S.W.2d 780 (Tex.Crim.App.1976). A defendant's choice of self representation need not be "wise" and, may ultimately be "to his own detriment." However, if his choice is a result of an informed decision and is both knowingly and intelligently made, he must be allowed to proceed pro se. *See Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989). Nevertheless, an accused's right to proceed pro se does not attach until he clearly and unequivocally asserts it. *Funderburg v. State,* 717 S.W.2d 637, 642 (Tex.Crim.App.1986); *Scarbrough v. State,* 777 S.W.2d, at 92.

▆▆ It is apparent to us that appellant did indeed clearly and unequivocally assert his right to self-representation at the hearing quoted from above. He unequivocally told the court that he wished to proceed on his own and he even did his best to cite the United States Supreme Court opinion which expressly upheld his right to do so. *Faretta,* (supra). Thus, his right was invoked and the trial court at that point should have admonished appellant in accordance with Article 1.051(g) of the Texas Code of Criminal Procedure, and if appellant persisted, the court could have constitutionally allowed him to proceed on his own. However, while the trial court did not strictly comply with appellant's requests to dismiss his appointed counsel and to allow appellant to proceed without the assistance of licensed counsel on appeal, it did not deny appellant any substantive or procedural right on appeal.

The trial court here allowed appellant the best of both worlds. While the court appointed counsel to represent appellant on appeal, it also granted appellant permission to write and file his own appellate brief in appeal of his conviction. And, to that end, the court granted appellant's motions "requesting notification" and "to inspect and copy record on appeal." Those motions requested that appellant be allowed personal access to the record to enable him to represent himself in a manner that would be satisfactory to him in his pro se brief. In short, the trial court allowed hybrid representation on appeal.[12]

Contrary to the assertion of appellant's counsel, in this point of error, the trial court did not deny appellant his right to self representation as guaranteed in *Faretta v. California.* The court allowed appellant to file his own pro se brief. Thus, even though counsel was appointed to represent appellant on appeal, the court preserved appellant's dignity and autonomy which, after all, is what "the right to appear pro se exists to affirm." *McKaskle v. Wiggins,* 465 U.S. 168, 176–177, 104 S.Ct. 944, 950, 79 L.Ed.2d 122 (1984).

In *McKaskle* (supra), Justice O'Connor, writing for a majority of the United States Supreme Court, explained that:

*Faretta* rights are adequately vindicated **in proceedings outside the presence of the jury** if the pro se defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the pro se defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel. (emphasis added).

She also went on to explain that "trial judges", and we will further expand her reasoning to include appellate judges, must be presumed sufficiently able to distinguish between the claims of a pro se defendant and the claims of appointed counsel. The focus, in determining whether a violation of rights guaranteed under *Faretta* has occurred, should be on "whether the defendant has had a fair chance to present his case in his own way." *McKaskle,* 465 U.S., at 177, 104 S.Ct., at 950.

With that in mind it does not appear that *Faretta* rights are violated on appeal, as long as a defendant is allowed to view the record and file a brief on his own behalf, unless there is some conflict inherent in the arguments presented by the defendant and

---

12. While in Texas there is no absolute right to hybrid representation, the court may allow such form of representation in it's discretion. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App. 1989).

those presented by appointed counsel. The corollary to that is, however, that the courts of appeal must give full and adequate consideration to those points of error raised by such a defendant in a pro se brief. And, recognizing that fact, we will give full address to appellant's four points of error presented in his "Appellant's Pro Se Supplemental Brief." Accordingly, appellant's ninth point of error is overruled.

Turning now to "Appellant's Pro Se Supplemental Brief," appellant personally raises four pro se points of error. Each of those points concerns, at least partly, the constitutionality of Texas Code of Criminal Procedure, article 37.071 (Vernon's, 1981). Since the time of appellant's trial, however, article 37.071 has undergone some changes. Therefore, in order to alleviate confusion, we will set out the relevant sections of that article, which were in effect at that time, and which are here being questioned.

■■■ Appellant directly questions the constitutionality of subsections (d), (e), and (g) of Texas Code of Criminal Procedure, article 37.071 in points of error one (1) through three (3). However, it is important to note that while the subsection (g) which appellant complains of was not yet enacted at the time that appellant committed his offense or at the time of his trial,[13] the content of that section was present and effective as the last sentence of subsection (e). Therefore we will now only set out the text of subsections (d) and (e) that were in effect at the time of appellant's offense and at the time of his trial. Additionally, from this point forward whenever we discuss what appellant calls subsection (g), we will refer to it as: "the last sentence of subsection (e)." The Texas Code of Criminal Procedure, art. 37.071 then read, in pertinent part:

(d) The court shall charge the jury that:
(1) it may not answer any issue "yes" unless it agrees unanimously; and
(2) it may not answer any issue "no" unless 10 or more jurors agree.

(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death. If the jury returns a negative finding on or is unable to answer any issue submitted under this article, the court shall sentence the defendant to confinement in the Texas Department of Corrections for life. The court, the attorney for the State, or the attorney for the defendant may not inform a juror or a prospective juror of the effect of failure of the jury to agree on an issue submitted under this article.

Tex.Code Crim.Proc.Ann., Art. 37.071(d), (e) as amended by acts 1981, 67th Leg., p. 2673, ch. 725, § 1, eff. Aug. 31, 1981.

In his first pro se point of error, appellant complains that subsection (d) is unconstitutional because it was misleading to the individual jurors and he asserts that the harm was compounded by the prohibition contained in "the last sentence of subsection (e)." Appellant argues that subsection (d) was misleading to the jury because while his jury was told, during the death qualification in voir dire, that "yes" answers to the special issues would result in a sentence of death, and "no" answers to the special issues would result in a life sentence, sub-subsection (2) to subsection (d) mislead the jurors into believing that appellant would not receive a life sentence unless 10 or more jurors agreed that the answer to an issue should be "no." Furthermore, appellant argues that the prohibition contained in "the last sentence of subsection (e)" compounded the harm of the instruction provided in subsection (d) by affirmatively disallowing the court or its officers to cure the misleading effect.

Nevertheless, we have recently addressed this very issue in *Draughon v. State*, 831 S.W.2d 331, 337 (Tex.Crim.App. 1992) (rehearing denied June 29, 1992). In that case, the defendant contended that the jury instructions given during the punish-

---

13. Appellant committed the capital murder of his father on October 9, 1984. He was convicted of that offense on June 27, 1985. The subsection (g) to article 37.071 of the Texas Code of Criminal Procedure of which appellant complains did not become effective until September 1, 1985. *See* Acts 1985, 69th Leg., ch. 44 § 2, eff. Sept. 1, 1985.

ment stage of his trial misled jurors by intimating that a life sentence would not be imposed unless 10 or more jurors agreed that the answer to an issue should be "no," we reiterated our long standing position that "there is no apparent constitutional inhibition to concealing from jurors the consequence of their deliberations, so long as they are not misled into believing that the ultimate responsibility for the verdict rests elsewhere." Cf. *Draughon,* (supra); *and Cf. Davis v. State,* 782 S.W.2d 211, 221–222 (Tex.Crim.App.1989), cert. denied, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520.

Furthermore, the individual juror is not misled by these instructions. Appellant's argument rests upon the idea that in a situation where a juror knows that "yes" answers would result in a death sentence and "no" answers would result in a life sentence, and the juror is also instructed under subsection (d) that no issue may be answered "yes" unless the jury agrees unanimously and that no issue may not be answered "no" unless 10 or more jurors agree, the juror is somehow misled to believe that unless 10 or more jurors agree on a "no" vote, an individual vote of "no" will have a *de minimis* effect. However, appellant's logic is flawed because he conveniently forgets to mention that a juror with the same knowledge also knows that if only one juror refuses to vote "yes", the defendant will not receive a death sentence. Consequently, each juror is aware that his vote carries great significance in the determination of a defendant's sentence. It is of little importance that a juror does not know the consequence of the jury's potential inability to answer the issues because jurors are never encouraged to change their vote merely to reach agreement with the other jurors; rather, they are only encouraged to vote based upon whether they have a reasonable doubt that the answer to an issue should be "yes" and they are encouraged to listen to the other jurors with an openness to changing their answers if and only if they are convinced that there is actually a reasonable doubt or that all reasonable doubt has been eliminated. And finally, we reiterate the position we took in *Draughon,* 831 S.W.2d, at 338, that

"[A]bstention is not a jury option.... it is merely a consequence of the jury's inability to exercise its available options by reaching a verdict." Therefore, it is not misleading to not tell a jury the effect of their failure to reach a verdict. Appellant's first pro se point of error is overruled.

In his second pro se point of error, appellant alleges that Art. 37.071 is unconstitutional because the statutory entitlement to a sentence of less than death provided by subsection (e) is improperly depreciated by the misleading operation of subsection (d) and "the last sentence of subsection (e)." However, we disagree with appellant because, while it may be the case that the jury's lack of information about what will happen to appellant in the case of deadlock may decrease the likelihood of a life sentence since the jurors are encouraged to strive for a verdict, "[A]bstention is not an option.... it is merely a consequence of the jury's inability to exercise its available options by reaching a verdict." *Draughon v. State,* 831 S.W.2d, at 338; *and see Padgett v. State,* 717 S.W.2d 55, 58 (Tex.Crim. App.1986). For that reason, and for the reasons stated in our address of appellant's pro se point of error number one, we find no merit in appellant's pro se point of error number two. Appellant's second pro se point of error is overruled.

■ In his third pro se point of error appellant complains that article 37.071 is unconstitutional because it operated to deny him effective assistance of counsel. Appellant asserts that his counsel's performance was deficient due to the prohibition imposed by the "last sentence of subsection (e)." He claims it inhibited his counsel's questioning of veniremen on voir dire and that it prevented his counsel's final argument during the punishment phase in answer to the argument of opposing counsel and for mercy. However, contrary to appellant's bare assertions, we do not believe that this statute unduly limits a defense counsel's scope of voir dire nor do we believe that it prevents argument in answer to argument by opposing counsel or a plea for mercy. As we have said, and as we feel compelled to reiterate here, "there is

no apparent constitutional inhibition to concealing from the jurors the consequences of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere." *Draughon v. State,* 831 S.W.2d, at 337; *and Cf. Davis,* 782 S.W.2d, at 221–222. Appellant's third pro se point of error is overruled.

Finally, in appellant's fourth pro se point of error, he claims that he was denied effective assistance of counsel because counsel failed to perfect a valid meritorious attack on the constitutionality of article 37.071. His argument on this point is actually a fail-safe provision in case we did not reach the issues he raised in his pro se points of error one through three due to procedural bar. He asserts that his counsel's performance was deficient for permitting him to be tried and sentenced to death without objecting or otherwise raising these issues. Nevertheless, it does not amount to a deficiency in performance of counsel to fail to object to a point when such objection would have conflicted with what at the time of trial was taken to be settled law and would therefore be futile. And, as we have found this point to be without merit, appellant's fourth pro se point of error is overruled.

Having considered each of the twenty-two points of error raised by appointed counsel, and having fully considered each of appellant's four pro se points of error, we do not believe that any of them merit reversal of the judgment of the trial court. Appellant's conviction and his sentence of death are affirmed.

CLINTON and CAMPBELL, JJ., concur in the result.