**Opinion issued May 4, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-21-00604-CR**

**NO. 01-21-00605-CR**

**NO. 01-21-00607-CR**

———————————

**MOHAMMED OMAR ALI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 20-DCR-090153, 20-DCR-090152, 20-DCR-090150A**

---

**MEMORANDUM OPINION**

Appellant Mohammed Omar Ali appeals from his convictions and punishments for three related sex offenses against three of his former stepdaughters:

one count of the first-degree felony offense of aggravated sexual assault of a child and two counts of the second-degree felony offense of indecency with a child by sexual contact.[1] *See* TEX. PENAL CODE §§ 22.021(a)(1)(B)(i), (2)(B), (e), 21.11(a)(1), (d). The trial court sentenced Ali to thirty-five years' imprisonment for the aggravated sexual assault conviction and ten years' imprisonment for each of the convictions for indecency with a child, with the sentences to run concurrently. *Id.* at §§ 12.32(a), 12.33(a).

In appellate cause number 01-21-00604-CR, which is an appeal from one of the convictions for indecency with a child, Ali argues in a single issue that the trial court erred by improperly commenting on the weight of the evidence in the jury charge. In appellate cause numbers 01-21-00605-CR and 01-21-00607-CR, Ali's appointed counsel on appeal has filed a motion to withdraw, along with an *Anders* brief stating that the records in these two appeals present no reversible error and the two appeals are without merit and are frivolous. We affirm.

---

[1] Appellate cause number 01-21-00604-CR corresponds to trial court case number 20-DCR-090153, concerning one of the convictions for indecency with a child. Appellate cause number 01-21-00605-CR corresponds to trial court case number 20-DCR-090152, concerning the second conviction for indecency with a child. Appellate cause number 01-21-00607-CR corresponds to trial court case number 20-DCR-090150A, concerning the conviction for aggravated sexual assault of a child under fourteen years of age.

## Background

In 2013, Ali married Rose Ira and moved into her Fort Bend County home.[2] Ira was previously married to Alex Ira, who died in a car accident in 2008, and the Iras had nine children together: two sons and seven daughters ranging in age from fifteen to thirty-one years old at the time of trial. Relevant here, the seven sisters included Lily, the oldest child; Fanny, the middle child; Jenny and Amy, two of the younger children; and Yvette, the youngest child. Each of these sisters—along with a brother and an uncle—lived at home with Rose when Ali moved into the home, although some of these family members eventually moved out of the house.

Ali was devoutly religious. He taught the Quran at a local mosque and also privately tutored some children in their religious studies. When he moved into the Ira home, Ali took an active role in the religious education of the Ira children who still lived at home. For example, he would wake the children up each morning before the sun rose to pray and tutor them in the Quran. He also drove some of the children to school and other activities.

In 2013, when Fanny was fifteen years old, she and Ali were studying the Quran together in Ali and Rose's bedroom, which they did not typically do. No one else was in the bedroom, although some other family members were in the adjacent

---

[2]    We use pseudonyms to protect the privacy of the minor complainants and their family members.

3

living room. While standing next to Fanny, Ali began touching Fanny's breasts and vagina over her clothing. Fanny left the bedroom, found her oldest sister Lily, and reported Ali's conduct.[3] Lily promptly told her mother and brother, who were in the living room, and they in turn confronted Ali, who excused the touching as a misunderstanding. The family accepted this explanation and took no other action on the allegations at that time. Fanny testified at trial, however, that Ali would often come into her bedroom early in the morning and wake her by touching her body, which made her feel uncomfortable.

In December 2019, Lily heard concerning rumors about Ali's behavior in the community. She called a family meeting, which Ali attended along with Rose and all the siblings except the two youngest sisters: Amy and Yvette.[4] While Lily was discussing the rumors, Fanny mentioned the 2013 incident with Ali. At that point, Jenny began hyperventilating and having a panic attack, which Lily recognized because she was an emergency room nurse. Jenny, who was seventeen years old when the meeting occurred, told everyone in the room that Ali had touched her inappropriately too. She testified at trial that Ali repeatedly molested her beginning when she was in fifth grade and "throughout middle and high school years."

---

[3]     Fanny testified that she typed out what had happened in an app on her phone, which she then showed to Lily.

[4]     Fanny and her two brothers had moved out of the house by this time and participated in the meeting by FaceTime videoconferencing.

After hearing these allegations against Ali, Lily went to Amy's bedroom and asked Amy if Ali had ever touched her inappropriately. Lily testified that Amy began "shaking and crying" and made an outcry to Lily. Amy told Lily—and testified at trial—that in March 2017, when Amy was thirteen years old and in seventh grade, Ali attempted to have sexual intercourse with her. At the time, Rose and Lily had taken a trip to Dubai while the children remained at home with Ali. Amy became sick at school and was sent home. Amy was vomiting, so Ali insisted that she lie down in his and Rose's bed ostensibly so she could be nearer to a bathroom. While sleeping, Amy woke up to Ali removing her underwear and attempting to have sexual intercourse with her, causing her pain. Amy testified that Ali molested her several times before this incident in her bedroom at night by touching her inappropriately while he masturbated.

The Ira family confronted Ali with these allegations, and Ali packed up his belongings and left the house. The family did not see Ali again until trial in these cases.

Fanny decided to report Ali's behavior to law enforcement shortly after the December 2019 family meeting. Two of the children—Jenny and Amy—were forensically interviewed by specialists at the Fort Bend County Children's Advocacy Center ("CAC"), which offers services to children who have or may have been sexually or physically abused.

Investigators with the Fort Bend County Sheriff's Office interviewed Fanny, who was then an adult. The investigators had Fanny call Ali from her cell phone and attempt to obtain a recorded confession from him, and the recording was entered into evidence at trial and played to the jury. A transcript of the call was also admitted into evidence. Fanny made the call while in the police station with investigators and Lily present, although she told Ali she was alone when he voiced suspicion that other people were listening in. Fanny repeatedly pressed Ali to promise to stop touching her and her sisters and to accept responsibility for his actions. Although Ali equivocated on his responses, Fanny testified that he did not deny the allegations and he promised to stop touching the sisters.

Ali was indicted for three separate offenses.[5] The most significant charge was for the first-degree felony offense of aggravated sexual assault of Amy, who was under fourteen years of age at the time of the offense. Ali was also charged with two counts of indecency with a child by sexual contact, one count each for his conduct towards Jenny and Fanny, respectively, who were both under the age of seventeen at the time of the offenses. At trial, Lily, Fanny, Jenny, and Amy testified, as did the director of the CAC and the investigating officer.

---

[5] The appellate record indicates that Ali was charged in six separate indictments for the offenses of continuous sexual abuse of a young child and indecency with a child. The appeals at issue here concern only the three convictions discussed herein, and the appellate record does not indicate the outcome of the remaining indictments.

A jury convicted Ali of each charge, and the trial court certified Ali's right of appeal.

During the punishment phase, Yvette, who was the youngest of the nine children and fifteen years old at trial, testified that Ali had also sexually molested her. She testified that two years earlier, when she was thirteen years old and in seventh grade, Ali came into her bedroom one morning while she was still asleep and touched her private areas over her clothing. She also testified that Ali touched her on other occasions while the two of them were driving in the family car. Yvette reported these incidents to Lily during the December 2019 family meeting after the other sisters made outcries. Yvette was also interviewed by the CAC. Yvette was the only witness to testify during the punishment phase.

Ali elected for the trial court to assess punishment. The court sentenced Ali to thirty-five years' imprisonment for the aggravated sexual assault conviction and ten years' imprisonment for each of the convictions for indecency with a child by sexual contact, to run concurrently. Ali filed notices of appeal in each of the three cases.

**Jury Charge**

In a single issue in cause number 01-21-00604-CR—which is the appeal from the conviction for indecency with Jenny by sexual contact—Ali contends that the jury charge for this conviction erroneously contained an improper comment on the weight of the evidence, which caused him egregious harm. Specifically, Ali argues

7

that the description of the State's elected act omitted an "alleged" modifier, and therefore constituted a comment on the weight of the evidence.

## A.    Standard of Review

We review a complaint of jury charge error regardless of whether error was preserved. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Review of jury charge error involves a two-step process. *Kirsch*, 357 S.W.3d at 649. First, we determine whether the charge is erroneous. *Id.* If it is erroneous, then we analyze the error for harm. *Id.* If the error was preserved with a timely objection, then the error is reversible if it caused "some harm." *Gonzalez*, 610 S.W.3d at 27.

But where, as here, the defendant did not object, the error is reversible only if it caused the defendant "egregious harm." *Id.* Errors resulting in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Id.* (quoting *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005)). Under either harm standard, the appellant must have suffered actual harm, not merely theoretical harm. *Id.* In determining whether egregious harm is present, we review the entire record and consider four factors: the entirety of the charge, the state of the evidence, the arguments to the jury, and any other relevant information. *Id.*; *French v. State*, 563 S.W.3d 228, 235–36 (Tex. Crim. App. 2018).

8

**B.     Governing Law**

A trial court is required to issue to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, [and not] discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. art. 36.14; *see Kirsch*, 357 S.W.3d at 651. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)).

"A trial judge must maintain neutrality in providing such information and guidance" to the jury and "may not express any opinion on the weight of the evidence or draw the jury's attention to particular facts." *Id.* Article 36.14 "is designed to prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome." *Id.* An instruction "by the trial judge to the jury on the weight of the evidence reduces the State's burden of proving guilt beyond a reasonable doubt to the jury's satisfaction." *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (citation omitted).

A trial court generally should avoid including a non-statutory instruction in a jury charge because such an instruction often constitutes an impermissible comment

9

on the weight of the evidence. *Beltran De La Torre*, 583 S.W.3d at 617. Even an innocent attempt to provide clarity through a neutral instruction may be construed as a comment on the weight of the evidence if the instruction "singles out a particular piece of evidence for special attention," which the jury may then interpret as guidance from the presiding judge. *Id.* (quoting *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000)); *see Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008) (stating that "seemingly neutral instruction" may constitute impermissible comment on weight of evidence because instruction singles out particular piece of evidence for "special attention"). "[S]pecial, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Beltran De La Torre*, 583 S.W.3d at 617 (quoting *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007)). A non-statutory jury instruction will generally constitute an impermissible comment when the instruction "(1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense." *Id.* (quoting *Walters*, 247 S.W.3d at 212).

The Texas Court of Criminal Appeals has identified "three specific circumstances under which a trial court may single out a particular item of evidence in the jury instruction without signaling to the jury an impermissible view of the

10

weight (or lack thereof) of that evidence." *Bartlett*, 270 S.W.3d at 151. These three circumstances are when:

1)    the law directs the jury to attach "a certain degree of weight" or only a particular or limited significance to a specific category or item of evidence;

2)    the law specifically identifies particular evidence as a predicate fact from which a jury may presume the existence of an ultimate or elemental fact; and

3)    the admissibility of the evidence is contingent upon predicate facts that are for the jury to decide.

*Id.* Singling out evidence beyond these three circumstances may impinge on the jury's independence in its essential role as factfinder. *Id.* "In determining whether an instruction is a comment on the weight of the evidence, we must consider the court's charge as a whole." *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.— Dallas 2007, pet. ref'd).

## C.    Error Analysis

Ali challenges the language in the jury instruction concerning the State's election of the act to rely on for a conviction. The instruction stated:

> You are instructed to consider only the act elected by the State in deciding the guilt or innocence of the defendant in this indictment. The act elected by the State is *the one described by Jenny Ira (pseudonym) when she was in middle school and shared a bedroom with Amy Ira, in which the defendant caused his hand to contact the breast of Jenny Ira (pseudonym), while the defendant was sitting on her bed and masturbating.* Testimony concerning any other offenses alleged to have been committed by the defendant, if any, may not be considered for any purpose whatsoever, unless those other offenses, if any, meet all the requirements set out below in Paragraph V.

11

(Emphasis added.) Ali concedes that election language was necessary in the charge in this case "to ensure jury unanimity" in reaching a verdict. He argues, however, that the omission of any qualifying language, such as "alleged," indicating that the evidence was only an allegation, constituted an improper comment on the weight of the evidence. Ali also argues that the omission of language qualifying the testimony was highlighted by the very next sentence, which used two qualifiers when addressing testimony about extraneous offenses.

A felony criminal conviction requires a unanimous verdict. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. art. 36.29(a); *Ngo*, 175 S.W.3d at 745. "Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745; *see de la Luz Torres v. State*, 570 S.W.3d 874, 880 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (stating that unanimous verdict "means that the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged"); *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (op. on reh'g) (stating that unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense" and is "more than mere agreement on a violation of a statute").

"A non-unanimous verdict can occur when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate

occasions." *de la Luz Torres*, 570 S.W.3d at 880. In a trial for a sexual offense, where one act is alleged in an indictment and more than one act is shown by the evidence to constitute a felony offense, the State must typically elect the act upon which it will rely for a conviction. *Garcia v. State*, 614 S.W.3d 749, 753 (Tex. Crim. App. 2019); *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). This election requirement serves four purposes: (1) to protect the accused from the introduction of extraneous offenses; (2) to minimize the risk that the jury might choose to convict not because one or more crimes were proved beyond a reasonable doubt but because all of them together convinced the jury that the defendant was guilty; (3) to ensure unanimous verdicts on one specific incident; and (4) to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend against the charges. *Phillips v. State*, 130 S.W.3d 343, 349 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006) (citing *Fisher v. State*, 33 Tex. 792, 794 (1870), *Francis*, 36 S.W.3d at 123–25, and *O'Neal*, 746 S.W.2d at 772–73).

The parties do not dispute that it was necessary to single out Jenny's testimony in the jury charge to inform the jury of the allegation that the State elected to proceed upon for this charged offense. *See Castro v. State*, No. 03-19-00882-CR, 2021 WL 6141560, at *5 (Tex. App.—Austin Dec. 30, 2021, pet. ref'd) (mem. op., not designated for publication) ("Although election language does not fall within the

13

categories enumerated in *Bartlett*, it is consistent with the Court of Criminal Appeals' objective in demarcating the exceptions" to commenting on weight of evidence). We therefore assume without deciding that election language can be a fourth circumstance in which a jury charge may permissibly single out evidence without improperly commenting on that evidence. *See Bartlett*, 270 S.W.3d at 151. The issue is whether the omission of a modifying term, such as "alleged," when referring to Jenny's testimony rendered the reference an impermissible comment on the weight of the evidence.

Ali relies primarily on *Castro* to argue that "[s]imilar language that simply referred to specific testimony of the complainant but failed to include any qualifiers, such as 'alleged,' has been found to be error." In *Castro*, a defendant was convicted of seven counts of indecency with a child by sexual contact and two counts of sexual assault of a child. *See* 2021 WL 6141560, at *1. The jury charge identified each count of indecency with a child by the relevant testimony of the complainant. *Id.* For example, one count stated, "This count refers to the testimony of M.C. regarding breast touching in the small house." *Id.* at *1 n.2. The defendant argued that the inclusion of election language in the charge constituted an improper comment on the weight of the evidence, in part because it omitted the term "alleged" as a modifier of the conduct. *Id.* at *4, 6. The court noted that the charge included the qualifying term "regarding" or "in regards to," although it did not consider whether such terms

14

were necessary. *Id.* at *6. Nevertheless, the court concluded that the election language constituted an improper comment on the weight of the evidence not because it omitted a modifier but because it "explicitly and repeatedly referr[ed] to the testimony of the complainant—the sole witness to testify about the facts underlying the charges," and the trial court therefore "influenced the State's burden and engaged in the very conduct proscribed by Article 36.14." *Id.*

Thus, *Castro* did not hold that it was error to simply refer to specific testimony in jury charge election language without a qualifying term. The error in *Castro* was the explicit and repeated references to the evidence in the jury charge, not the omission of a qualifying term. Therefore, *Castro* does not support Ali's argument.

Ali also relies on *Vickery v. State*, in which the defendant challenged the following election language in a jury charge:

> The State has elected to proceed on the conduct described by [J.D.T.] as the first time the defendant is alleged to have touched the genitals of [J.D.T.] by grabbing them with his hand occurring while [J.D.T.] resided at the residence on Jet Street and was 8 or 9 years of age.

*See* No. 02-04-00422-CR, 2005 WL 2244730, at *6 (Tex. App.—Fort Worth 2005, pet. ref'd) (per curiam) (mem. op., not designated for publication). The defendant argued that this language impermissibly commented on the weight of the evidence because it stated that the "the conduct . . . occur[red]" rather than "the conduct, if any, . . . which allegedly occurred." *Id.* The court disagreed, stating that the challenged sentence included the modifying term "alleged," which acted "as a

15

modifier of the entire descriptive phrase—the 'conduct' to which J.D.T. testified." *Id. Vickery* did not consider whether the election language required the use of a modifier or whether the language without the modifier would have constituted an impermissible comment on the weight of the evidence. *Id.* At best, *Vickery* supports an argument that modifying terms can cure otherwise improper election language. Because the opinion does not address the issue presented here, *Vickery* offers little guidance in this case.

The State relies on *Hathorn v. State* to argue that the omission of modifying terms "alleged" and "if any" does not render a jury instruction an improper comment on the weight of the evidence. *See* 848 S.W.2d 101 (Tex. Crim. App. 1992). There, the defendant was charged with capital murder for killing his father and other family members for remuneration, specifically an early inheritance from his father's estate. *Id.* at 105–06, 113–14. The jury charge referred to the estate without describing it as an alleged estate, which the defendant argued impermissibly commented on the weight of the evidence because it assumed the existence of the estate. *Id.* at 113. The challenged portion of the charge read:

> Now if you believe from the evidence beyond a reasonable doubt that the defendant, Gene Wilford Hathorn, Junior, on or about the ninth day of October, 1984, in Trinity County, Texas, did intentionally cause the death of an individual, Gene Hathorn, Sr., by shooting him with a gun and you further find that said Gene Wilford Hathorn, Junior, did cause the death of Gene Hathorn, Sr., for the promise of remuneration, to wit: The Estate of Gene Hathorn, Sr., then you will find the defendant, Gene

16

Wilford Hathorn, Junior, guilty of capital murder as charged in Count 2 of the indictment.

*Id.* at 113–14. The Court of Criminal Appeals concluded that the reference to the father's estate was not a comment on the weight of the evidence at all. *Id.* at 114. The court reasoned that remuneration was an element of the charged capital murder offense, and therefore the reference to the estate in the jury charge was intended to request a finding on whether the State proved a necessary element of the offense. *Id.* Because the reference to the estate was not an impermissible comment on the weight of the evidence, it was unnecessary to include the modifying terms "alleged" or "if any" in the instruction. *Id.* In a partially unpublished opinion, this Court has interpreted *Hathorn* as implying that, "had the charge been a comment on the weight of the evidence, the inclusion of the words 'if any' would have cured the error." *Blok v. State*, 986 S.W.2d 389, 391 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g) (citing *Hathorn*, 848 S.W.2d at 114); *see also Mattox v. State*, 874 S.W.2d 929, 933–34 (Tex. App.—Houston [1st Dist.] 1994, no writ) (concluding that use of term "aggravated assault" in charge without any word of limitation, such as "if any," constituted impermissible comment on weight of evidence under article 36.14).

In this case, the election language specifically referenced Jenny's testimony without any modifying terms such as "alleged." Although the allegations are prefaced as Jenny's testimony, the allegations read as if they affirmatively occurred: "[Ali] caused his hand to contact the breast of Jenny Ira (pseudonym), while [Ali]

17

was sitting on her bed and masturbating." This language called attention to particular evidence: Jenny's testimony. But "[e]ven a judge's innocent attempt to provide clarity for the jury by including a neutral instruction can result in an impermissible comment on the weight of the evidence because the instruction singles out a particular piece of evidence for special attention, which the jury may then focus on as guidance from the judge." *Beltran De La Torre*, 583 S.W.3d at 617 (quotations omitted).

Moreover, these facts are the only facts referenced in the entire jury charge. *See Delapaz*, 228 S.W.3d at 212 (stating that reviewing court considers charge as whole in determining whether particular instruction is comment on evidence). Even if inclusion of the language was an innocent and necessary attempt to clarify the State's elected act, the jury reasonably could have interpreted the singling out of this sole evidence without any modifying language as guidance from the judge in reaching a verdict. *See Beltran De La Torre*, 583 S.W.3d at 617; *Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (plurality op.) (stating that trial judge improperly comments on weight of evidence by making statement that implies approval of State's argument, indicates disbelief in defensive position, or diminishes credibility of defensive strategy). Under the circumstances presented in this case, we agree that the trial court erred by referring

to the elected act without a modifying term such as "alleged." *See Beltran De La Torre*, 583 S.W.3d at 617; *Blok*, 986 S.W.2d at 391; *Mattox*, 874 S.W.2d at 933–34.

**D.     Harm Analysis**

Although error exists in the jury charge, we disagree that the error caused Ali egregious harm. *See Gonzalez*, 610 S.W.3d at 27 (stating that unpreserved jury charge error is reversible only if it caused "egregious harm"). To result in egregious harm, an error must affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Id.* (quoting *Ngo*, 175 S.W.3d at 750). The appellant must have suffered actual harm, not merely theoretical harm. *Id.* "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).

In determining whether egregious harm is present, we review the entire record and consider four factors: the entirety of the charge, the state of the evidence, the arguments to the jury, and any other relevant information. *Gonzalez*, 610 S.W.3d at 27; *French*, 563 S.W.3d at 235–36. In some circumstances, a single consideration may suffice to establish that the risk of harm is so minimal that the harm is not egregious. *Gonzalez*, 610 S.W.3d at 27. Our analysis is fact specific and conducted

on a case-by-case basis. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

### 1. Entirety of the Charge

Ali's argument on appeal focuses solely on the inclusion of the erroneous unmodified election language in the jury charge, which Ali contends "related to the only contested issue of fact at trial": whether the incident occurred. The State responds that this was not a contested issue because the only contradictory evidence presented at trial was Ali's statement that the incident was a misunderstanding. Further, the State argues that it was necessary to include the election language in the jury charge, and the charge also instructed the jury that it was the sole factfinder, including on issues of witness credibility and the weight to be given to witness testimony.

The disputed election language in the charge contained the entire act elected by the State for conviction in this case. Regardless of whether contradictory evidence existed in the record, Ali pleaded not guilty to the charge, thereby putting the State to its burden of proof. We agree with Ali that this language relates to the only dispute at trial on this cause number: whether the elected incident occurred. Furthermore, we note that these are the only facts referenced in the jury charge, which emphasizes their presence.

Nevertheless, in the context of the entire jury charge, this factor weighs against a finding of egregious harm. Each charged offense was contained in a separate jury charge, and the jury charge in this case set forth the elements of the offense of indecency with a child by sexual contact. The charge detailed the State's burden to prove the offense beyond a reasonable doubt. The charge also referred generally to "the offense, if any," that "is alleged in the indictment to have been committed . . . ." Finally, the charge instructed the jurors that they were "the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony," and that the jury was "bound to receive the law from the Court." Furthermore, in the preface to the paragraph concerning the State's elected act, the charge informed the jury that the "State has presented evidence of more than one incident to prove the act alleged."

The charge used modifying terms, as Ali argues it should have, just not when specifically referring to Jenny's testimony as the elected act. Thus, the jury charge as a whole properly instructed the jury that the State had the burden to prove its allegations, which significantly minimizes the effect of omitting modifying terms in the election language specifically. This factor weighs heavily in favor of a finding that Ali was not egregiously harmed by the jury charge. *See Gonzalez*, 610 S.W.3d at 27 (stating that "a single consideration may persuade us that the risk of harm is so minimal that it precludes a finding of egregious harm").

21

## 2. State of the Evidence

Under this factor, we consider the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused actual harm. *Arrington*, 451 S.W.3d at 841. Ali argues that the only evidence of the offense in this case was Jenny's testimony, a "specific portion" of which was emphasized in the jury charge. The State responds that other evidence of this offense exists in the record, including testimony from Amy, who shared a bedroom with Jenny, about similar acts Ali committed against her. The State also points to a transcript of a telephone conversation between Jenny and Ali in which Ali agreed to stop touching Jenny and her sisters, did not accuse Jenny of lying, and did not deny the accusations.

At trial, Jenny testified about a time when Ali came into her and Amy's shared bedroom in the middle of the night, sat on her bed, and masturbated while touching her inappropriately over her clothes. Jenny testified that she knew it was Ali because of his clothing. The State also introduced and played the recording of the telephone conversation between Jenny and Ali, in which Jenny repeatedly pressed Ali to acknowledge and apologize for inappropriately touching her and her sisters. Ali raised suspicions that others were listening in on the phone call. He repeatedly apologized, but his apologies were ambiguous. For example, he would say, "I say everything sorry. Everything. If I—if I hit you and if I—I touch you like, . . . something wrong. All—all of this, I'm sorry." He even denied touching "anybody"

22

at one point. But Ali did respond "Yes" when Jenny asked him, "So, you promise to stop touching us, right?" At the end of the conversation, Ali said, "I say I promise God willing. . . . I promise I stop everything. I all [sic] mistake. I will stop[.]"

On the recording, Ali did not unequivocally admit to touching any of the Ira sisters inappropriately, and he certainly did not unequivocally admit to masturbating while touching Jenny in her bedroom at night, which is part of the State's elected act. Nevertheless, the jury charge informed the jury that it was the sole factfinder, and the jury reasonably could have concluded from the audio recording that Ali admitted to some inappropriate touching. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (stating that reviewing court may not reevaluate weight and credibility of evidence and thereby substitute court's judgment for that of factfinder); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (stating that reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). Because evidence of the offense other than Jenny's testimony existed, it is less likely that the reference to Jenny's testimony in the charge actually caused Ali harm. *See Arrington*, 451 S.W.3d at 841.

### 3. Arguments to the Jury

Ali argues that the State argued to the jury that all of the acts about which Jenny testified would support a conviction for the offense, despite the State's election, and the State incorrectly argued that the elected act occurred in the summer between Jenny's fifth and sixth grade years rather than "throughout middle and high school years." Ali further argues that the State confused the various incidents by arguing that Jenny knew it was Ali touching her because he had done other similar acts. According to Ali, the State's arguments made it "impossible for the jury to parse out that the court's instruction referred simply to an allegation and not the court's opinion regarding the truthfulness of the testimony."

Under this factor, we consider whether any statements made by the State, Ali, or the court during trial exacerbated or ameliorated error in the charge. *See id.* at 843; *Ngo*, 175 S.W.3d at 750–52 (finding egregious harm when jury charge did not contain unanimity instruction and trial judge and prosecutor repeatedly told jury that verdict need not be unanimous). We disagree that the State's challenged arguments exacerbated the comment in the jury charge. Initially, we note that Ali's primary argument is that the *trial court* erred by impermissibly commenting on the weight of the evidence in the jury charge, yet Ali relies solely on the *State's* arguments under this factor. We do not agree that these arguments by the State exacerbated any perception by the jury of the court's view of the evidence.

24

To the contrary, as the State points out, the charge instructed the jury on extraneous offenses and the limited purposes for which the jury may consider acts other than the elected act. Our review of the appellate record does not reveal any argument that exacerbated or ameliorated the challenged election language in the charge. *See Arrington*, 451 S.W.3d at 843. Thus, this factor is neutral.

### 4.    Other Relevant Information

Ali argues that he was tried for three separate offenses in a single trial, which imposed upon the jury the "unenviable task" of delineating the evidence that properly could be considered for each charge from the evidence of extraneous offenses and the purposes for which such evidence could be considered. According to Ali, referring to Jenny's testimony in the charge lessened the State's burden of proof and confused the jury.

Although the jury's task was complicated by having to consider three separate offenses in a single trial and having to parse through the evidence and consider it for certain purposes—either as evidence of a specific charged offense or evidence of an extraneous offense—we disagree that this factor supports a finding of egregious harm. The charge explained the meaning of extraneous offense evidence and clarified the uses for which it could be considered. The election language also clarified the difference in the types of evidence that the jury properly could consider. Thus, the other relevant information relied upon by Ali does not support his

25

argument that he suffered egregious harm due to the trial court's impermissible comment on the weight of the evidence.

Based on our review of the entire record and consideration of these factors, we conclude that the charge error did not cause Ali egregious harm. *See Gonzalez*, 610 S.W.3d at 27. We overrule Ali's sole's issue in appellate cause number 01-21-00604-CR.

### *Anders* **Procedures**

In appellate cause numbers 01-21-00605-CR and 01-21-00607-CR, Ali's appointed counsel on appeal has filed a motion to withdraw, along with a brief stating that the records in these two appeals present no reversible error and, therefore, these two appeals are without merit and are frivolous. *See Anders v. California*, 386 U.S. 738 (1967). The State filed a letter brief waiving its right to file an appellate brief in these two appeals.

Counsel's brief meets the *Anders* requirements by presenting a professional evaluation of the appellate records and including references to the records and to legal authority. *See id.* at 744–45; *see also High v. State*, 573 S.W.2d 807, 812, 813 (Tex. Crim. App. 1978). Counsel indicates that she has thoroughly reviewed the records in these two appeals and is unable to advance any ground of error in either appeal that warrants reversal. *See Anders*, 386 U.S. at 744; *Mitchell v. State*, 193 S.W.3d 153, 155 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

26

Counsel mailed a copy of the motion to withdraw and the *Anders* brief to Ali and informed him of his right to file a response and to access the appellate records. *See In re Schulman*, 252 S.W.3d 403, 408 (Tex. Crim. App. 2008) (orig. proceeding). Ali did not request access to the appellate records or file a pro se response in either appeal. *See id.* at 408–09.

The Court has independently reviewed the records in these two appeals, and we conclude that no reversible error exists in the record in either appeal, there are no arguable grounds for review in either appeal, and the two appeals are frivolous. *See Anders*, 386 U.S. at 744 (emphasizing that reviewing court—and not counsel—determines, after full examination of proceedings, whether appeal is wholly frivolous); *Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009) (reviewing court must determine whether arguable grounds for review exist); *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005) (reviewing court is not to address merits of each claim raised in *Anders* brief or pro se response after determining there are no arguable grounds for review); *Mitchell*, 193 S.W.3d at 155–56. An appellant may challenge a holding that there are no arguable grounds for appeal by filing a petition for discretionary review in the Texas Court of Criminal Appeals. *See Bledsoe*, 178 S.W.3d at 827 & n.6.

27

## Conclusion

The Court affirms the judgment of the trial court in these three appeals. *See* TEX. R. APP. P. 43.2(a). The Court further grants counsel's motion to withdraw in appellate cause numbers 01-21-00605-CR and 01-21-00607-CR.[6] Attorney Mandy Miller must immediately send the required notice and file a copy of the notice with the Clerk of this Court. *See* TEX. R. APP. P. 6.5(c). We dismiss any other pending motions as moot.

April L. Farris
Justice

Panel consists of Justices Kelly, Landau, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[6] Appointed counsel still has a duty to inform Ali of the result of these appeals and that he may, on his own, pursue discretionary review in the Texas Court of Criminal Appeals. *See Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005).