

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00283-CR

Isreal **GONZALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 23-0841-CR-C
Honorable William D. Old III, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Lori Massey Brissette, Justice
               Velia J. Meza, Justice

Delivered and Filed: April 30, 2025

AFFIRMED

Appellant Isreal Gonzales pleaded guilty to one count of manufacture and possession of more than 400 grams of methamphetamine, a first-degree felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f), a jury assessed punishment at thirty-three years imprisonment in the Texas Department of Criminal Justice–Institutional Division, and the trial court signed a judgment of conviction and sentence in accordance with the jury's verdict. In one issue, Gonzales argues that he was denied effective assistance of counsel during the punishment phase because his trial

counsel failed to either renew a previously overruled objection or request a running objection to the State's offer of evidence relating to firearms. We affirm.

## I. BACKGROUND

After jury selection, Gonzales pleaded guilty to one count of manufacture and possession of more than 400 grams of methamphetamine. The case proceeded to a two-day punishment-phase before a jury. Alejandro Parra, a narcotics detective with the Seguin Police Department, testified that the department had received tips that Gonzales was distributing methamphetamine in Guadalupe County. The narcotics team began surveilling Gonzales, and it arranged for a confidential informant to purchase methamphetamine from him. After the sale, the narcotics team secured an arrest warrant.

Clayton Deagen, a narcotics K-9 handler with the Seguin Police Department, testified that he spotted Gonzales driving a sport utility vehicle on the evening of July 20, 2021, and he initiated a traffic stop. Officer Deagen's K-9 alerted to the presence of narcotics near Gonzales's driver's seat, and he searched Gonzales's vehicle. Officer Deagen found a loaded Walter P-22 handgun, a little over $3,000, 48.50 grams of methamphetamine, and an unspecified amount of cocaine in the center console of Gonzales's vehicle. Officer Deagen took photographs of what he had found in the center console. When the State offered these photographs into evidence, Gonzales, through his trial counsel and at the bench, objected by arguing "I'm going to object to any picture with the firearm in it. He's not charged with felon in possession, so anything with a firearm I think is unduly prejudicial and not relevant to the case since he's not being charged with it." The State responded by asserting, "it's punishment." The trial court ruled, "it's punishment. Overruled."

Later the same evening, Detective Parra, along with Officer Deagen and other members of the narcotics team, executed a search warrant on Gonzales's home. Detective Parra also called an

officer from the United States Drug Enforcement Agency ("DEA") to the scene. Detective Parra discovered digital scales, baggies, a combination safe, ammunition, a ledger with names and figures, and a rifle next to the safe. Gonzales told Detective Parra how to open the safe. In the safe, Detective Parra found 766 grams of methamphetamine, marijuana, thirty-five ecstasy pills, and 102 grams of cocaine. Officer Deagen acknowledged that Gonzales was cooperative with the narcotics team by — notwithstanding the search warrant — giving them consent to search his house and vehicles around his home and advising them that there were narcotics in a safe. In one vehicle, narcotics team members found a Cobra handgun. More methamphetamine was found in the tailpipe and door panel of another vehicle. The trial court admitted, among other things, three firearms, ammunition, and photographs of them without any further objection.

In total, the narcotics team found that Gonzales possessed 1,006.5 grams — or just over a kilogram — of methamphetamine. Detective Parra opined that Gonzales's possession of a kilogram of methamphetamine indicates that he was a "larger drug dealer." Robert Nelms, a sergeant with the Guadalupe County Narcotics Task Force, echoed Detective Parra's opinion, testifying that a "normal" drug dealer typically possesses between fourteen-to-twenty grams of methamphetamine. Sergeant Nelms estimated that the "street value" for a gram of methamphetamine is between twenty and thirty dollars. Detective Parra explained that handguns are generally used for protection in the drug dealing business. He elaborated that drug dealing is "a money-making business" and that drug dealers "can't really report if they get their product stolen, so generally, drug dealers would rob other drug dealers because they know they can't really report it."

During closing arguments, the State emphasized that Gonzales possessed "massive amounts of drugs, three firearms, and cash." The State characterized a "thousand individualized

doses" of methamphetamine as something "destructive and toxic . . . ready to just pour out on our streets." It linked Gonzales's possession of firearms with his drug trade, arguing:

> Then let's consider the guns, because, as [Detective] Parra said, he ain't calling the cops if someone comes knocking on his door looking to rob him of his drugs. That's why he has three separate firearms and in three separate locations, because he's got to handle things on his own. He's got guns ready to shoot people who are messing with his trade.
>
> . . .
>
> And let's also consider, hey, he's toting around guns, and people owe him. What happens when one of those people doesn't pay? What happens when — when Monica doesn't pay up that $400? What happens when Trey doesn't put up his [$]450? Again, he doesn't call the cops. What is he — what is he going to do instead? Well, again, no coincidence he's got three firearms.

The State asked the jury to assess punishment at sixty years.

Gonzales's trial counsel responded by emphasizing that all three law enforcement officers who testified acknowledged that Gonzales was fully cooperative. Gonzales's trial counsel asked the jury to sentence Gonzales to the least allowable term of fifteen years, linking Gonzales's cooperation to a message sending argument:

> We want defendants who are charged with a crime or suspected of a crime to be able to believe law enforcement officers when they tell them — again, agree, there's no actual agreement not to charge or not to prosecute; but if you're winking and nodding the entire night, oh, yeah, go along with this, like, it will be fine, go along with this, and he does, and he's completely cooperative the entire time, why would anyone trust law enforcement in this county again when they tell them, oh, hey, cooperate, it will be fine, we'll go easy on them, and then just hit them, throw the book at them, down the road?
>
> So, again, as a public policy, I think it's good practice to give people who are cooperative with law enforcement, who talk to DEA agents not only once but twice, to not throw the book at them, give them the minimum, so that way, like I said at the beginning of this presentation, we can incentivize good behavior on their part and disincentivize at the same time, with that 15 years in prison, the bad behavior. So that's what I'm asking you to do today.

The jury assessed punishment at thirty-three years, and the trial court signed a judgment of conviction and sentence in accordance with the jury's verdict. Gonzales timely appeals.

## II. DISCUSSION

### A. Applicable Law & Standard of Review

"Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both prongs of the *Strickland* test are judged by the totality of the circumstances as they existed at trial, not through 20/20 hindsight." *Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012) (internal footnote omitted). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Hart*, 667 S.W.3d at 781. "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "We will not second-guess legitimate strategic or tactical decisions made by counsel in the midst of trial." *Williams*, 301 S.W.3d at 687. "Ordinarily, trial counsel should be afforded an opportunity to explain his conduct before being denounced as ineffective." *Sandoval v. State*, 665 S.W.3d 496, 545 (Tex. Crim. App. 2022). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent

attorney would have engaged in it.'" *Id*. (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## B.    Analysis

Liberally construing Gonzales's sole issue, he argues that the trial court abused its discretion in overruling his trial counsel's relevancy and unduly prejudicial objections to the first gun-related exhibit, and that his trial counsel was ineffective because he did not renew or request a running objection to the State's subsequent offers of gun-related evidence. *See* TEX. R. EVID. 401, 403. Gonzales emphasizes that of the forty-nine exhibits admitted over the punishment-phase, nine related to the Walter P-22 handgun and its magazine and ammunition, and seven related to the rifle and Cobra handgun.

We cannot say that Gonzales has overcome the presumption of trial strategy. *See Williams*, 301 S.W.3d at 687. Gonzales's trial counsel objected when the State offered the first photograph of the Walter P-22 handgun, and the trial court overruled the objection, noting that "it's punishment." Therefore, it is likely that Gonzales's trial counsel did not object when the State offered the two other firearms, ammunition, and corresponding photographs because he was aware that the trial court would, consistent with its earlier ruling, likely overrule the objection. It is also likely trial counsel did not wish to further emphasize the two other firearms while simultaneously undercutting his trial strategy of conveying cooperation. *See Hathorn v. State*, 848 S.W.2d 101, 120 (Tex. Crim. App. 1992) ("[W]e cannot rule out the possibility that counsel purposefully did not object as a result of a conscious choice in order to further a calculated trial strategy of openness and honesty before the jury.").

Lastly, Gonzales emphasizes a colloquy outside the jury's presence at the end of the first day of trial:

| | |
|---|---|
| COURT: | Would you like to admit [exhibits] 12 [ammunition for the Walter P-22 handgun], 13 [box containing the Walter P-22 handgun], 14 [the Walter P-22 handgun], and 15 [magazine for the Walter P-22 handgun], and now that you've shown it to the jury and he didn't object? |
| STATE: | Yes, Your Honor, I would. |
| COURT REPORTER: | And [exhibits] 16 and 17 [collective contraband discovered in the center console of Gonzales's SUV]. |
| COURT: | And 16 and 17. |
| STATE: | I thought I did.  Yes, Your Honor, I appreciate that. |
| GONZALES: | *I was curious if that was intentional.* |
| COURT: | Well, you could have objected.  She published them. I foolishly allowed her. |
| STATE: | The State would like to admit those exhibits into evidence. |
| COURT: | They're already admitted.  I've said so already. |

(Emphasis added).  From Gonzales's trial counsel's single sentence, he argues that his trial counsel "was not acutely aware of what just transpired, that he could have objected," and that "appellate courts have routinely found that the failure to make proper evidentiary objections out of sheer misunderstanding or ignorance of the rules satisfied *Strickland's* first prong of deficient performance."

Gonzales's expansive reading of the circumstance, his trial counsel's single sentence, and the trial court's statement that Gonzales's trial counsel "could have objected," is prohibited by our obligations to review both *Strickland* prongs in light of "the totality of the circumstances as they existed at trial, not through 20/20 hindsight," *Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012), and to ordinarily afford Gonzales's trial counsel "an opportunity to explain his conduct before being denounced as ineffective."  *Sandoval*, 665 S.W.3d at 545.  Under the

appropriate standard, the single sentence Gonzales highlights may not be read as a "sheer misunderstanding or ignorance of the rules" and may be more properly read as consistent with a strategy — after having first failed to exclude firearm evidence — to emphasize Gonzales's cooperative nature with the narcotics team and at trial so as to plead for leniency. *See Hathorn*, 848 S.W.2d at 120.

We overrule Gonzales's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH